CHARLES FLOWERS, SURVIVOR OF ALICE FLOWERS, PLAINTIFF IN ERROR, *v.* FRANCIS FOREMAN, SURVIVING PARTNER OF CHRISTIAN KELLER, DEFENDANT.

Where a party residing in Maryland sold land in Louisiana with a general warranty to a resident of Louisiana, who was afterwards evicted from a part of it, and obtained a judgment against his warrantor, whom he had vouched in,

this judgment could not be rendered effective against the Maryland vendor, because no notice had been served upon him, and the appointment of a *curator ad hoc* was not sufficient.

An action of assumpsit having been afterwards brought against him in the Maryland court by the parties interested, the statute of limitations of Maryland was considered to be applicable to the case.

The eviction of the vendee took place when he held the land under a title different from that which had been conveyed to him by his grantor, without the necessity of the execution of a writ of possession.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Maryland.

It was an action of assumpsit brought by Charles Flowers and Alice Flowers, of Louisiana, claiming to be heirs and universal legatees of Charles Mulhollan, against Foreman, surviving partner of Keller & Foreman.

The claim arose in this way:

There was a tract of land in Louisiana, which Calvit conveyed to Davis, Davis to Keller & Foreman, and these last to Mulhollan, under a power of attorney dated 21st December, 1827. The attorney conveyed it to Mulhollan with a clause of general warranty.

Mulhollan, on the same day, conveyed a part of it to Reuben Carnal, but nothing more need be said about this deed for the purpose of explaining the questions which arose in this case.

The heirs of Calvit, in 1838, filed a petition in the District Court, parish of Rapides, State of Louisiana, alleging that they were the sole heirs of their mother, who was the lawful wife of Anthony Calvit; that during the community between said Anthony Calvit and his wife, he purchased said tract of land; that the said wife died, leaving the petitioners her heirs, and their father their natural tutor; that in the year 1822, while petitioners were minors, he sold the whole of said land to A. J. Davis, in violation of the rights of petitioners, who were entitled to one-half thereof, as the heirs of their mother: that said land was then in possession of said Charles Mulhollan and Reuben Carnal, and the petition prays that one-half of said land may be adjudged to them.

*Flowers v. Foreman.*

Carnal filed his answer, denying the allegations in the petition, alleging that he purchased said land from Charles Mulhollan, who was bound to defend the title, and citing him in warranty in the suit.

Mulhollan filed his answer, denying all the allegations of the plaintiffs, and alleging that he purchased said land from said Keller & Foreman, under a general warranty, and he prays that said Keller & Foreman, as warrantors, may be cited to defend him in his title and possession, and that *curators ad hoc* may be appointed to represent the said warrantors, who are absentees.

In conformity with the prayer contained in Mulhollan's answer, a citation issued, not to Keller & Foreman, but to George K. Waters, who is styled *curator ad hoc* of the parish of Rapides, and said Waters appeared and filed an answer, and undertook to defend the cause for the absentees, on whom no process was served, and who had no notice nor knowledge of the case.

The District Court gave judgment in favor of the defendant.

The case was appealed, and the Supreme Court of Louisiana, on the 26th of November, 1845, reversed the decision of the District Court, and ordered, adjudged, and decreed, "that said James and Coleman Calvit do recover of the defendant, each and respectively, one undivided eighth of the tract of land described in their petition, that they be quieted in their title to the said undivided eighth hereby decreed to them respectively as against the defendant or any person claiming through or under them;" but with regard to the question of improvements and rents and profits, so far as James and Coleman Calvit were interested, and as to the question of damages between the warrantees, the case was remanded to the District Court. And on a rehearing, the Supreme Court, on the 29th of October, 1845, decreed that its former judgment be maintained as far as it went, and that, in addition to the purposes for which it was ordered to be remanded, it be also remanded for the further purpose of ascertaining whether the price received by the plaintiffs' father and tutor for the property in dispute was applied to the payment of the community debts

of the father and mother of the plaintiffs, to which said James and Coleman were bound to contribute in proportion to their rights thereto; and that in the mean time no writ of possession issue until they have paid the amount which may be found to be due by them on the trial of the cause in the lower court.

During the progress of the cause, Charles Mulhollan died, and Charles Flowers and Alice Flowers appeared therein as his heirs and universal legatees.

Charles Mulhollan died in 1846. Shortly afterwards, Thomas O. Moore, the acting executor, paid to James and Coleman Calvit twelve hundred dollars each for their relinquishment of their claims to the tract of land in question.

On the 31st of May, 1853, the District Court rendered judgment in favor of Charles Flowers and Alice Flowers against Keller & Foreman, who were represented by the *curator ad hoc*. The judgment was for eight hundred and fifty dollars, with interest thereon, at five per cent., from the 14th of November, 1846, and costs.

There being no mode of reaching Keller & Foreman, under this judgment, an action of assumpsit was brought against them, as before stated, in the Circuit Court of the United States for the district of Maryland. The defendants pleaded the statute of limitations of Maryland.

The two statutes of this State are the following, viz:

The act of 1715, chapter 23, section 2, provides that all actions upon the case shall be brought "within three years ensuing the cause of such action, and not after," with a saving by section 22 in favor of persons beyond seas.

The act of 1818, chapter 216, section 1, repeals the saving in the act of 1715, in favor of persons beyond seas.

The reader will perceive that the only question in the case was when the statute began to run, whether in 1846 or 1853.

The Circuit Court granted the following instruction.

The defendant prays the court to instruct the jury, first, that the act of the State of Maryland, passed in the year 1715, chapter 23, entitled, "An act for limitation of certain actions, for avoiding suits at law," and the act of said State, passed in

the year 1816, chapter 216, entitled, "An act to avoid suits at law," constitute a bar to the recovery by the plaintiff in this case. To the granting of which instruction the plaintiff excepted, and upon this exception the case came up to this court.

It was argued by *Mr. Brent* and *Mr. Phelps* for the plaintiff in error, and by *Mr. Brown,* upon a brief filed by *Brown* and *Brune,* for the defendant.

The counsel for the plaintiff in error maintained the following proposition:

That upon all the evidence in the case it appears, either that our cause of action did not accrue at all, until 31st May, 1853, or only accrued *sub modo,* and in abeyance, and did not mature until that date; in either of which cases, we are within the statutory limits.

Such part of the argument of the counsel for the plaintiff in error as there is room to insert, was as follows:

That said contract was broken, giving a right of action to the plaintiff.

(Upon the defence of limitations.) That such action accrued within three years prior to the institution of the suit.

These two points will be considered together.

The contract was concerning land situated in Louisiana. It was made in Louisiana, and there it was to be performed. The inquiry therefore is, what, by the *lex loci,* was necessary to constitute a beach of the contract?

Story's Conf. Laws.

By the civil law, the remedy upon the obligation of warranty is two-fold, and each remedy has respect to a distinct and independent cause of action.

The more usual remedy in the French and Louisiana practice is the one which was originally resorted to in the present case, while pending in the Louisiana court. By it, the warrantor is formally vouched or cited in to defend his vendee's title, as soon as proceedings are commenced against the latter. If the seller thus called in cannot defend, "the judge con-

demns him to indemnify the defendant, by the same sentence by which he pronounces in favor of the original plaintiff."

In this form of proceeding, the cause of action may be said to arise as soon as the vendee is troubled in his possession by a suit, for at that moment his right to call in his vendor in warranty accrues.

The other remedy is the one now being prosecuted, and which was rendered necessary by the fact that the first was ineffectual, the court which gave judgment not having jurisdiction over the absent parties.

In substance, this remedy corresponds to the ordinary common-law action of covenant, and, like it, is not available until final sentence is pronounced, and cannot be brought before the vendee has sustained an eviction, either actual or constructive.

Pothier des Ventes, part 2, C. 1, sec. 2, art. 5, sec. 2.

Domat, lib. 1, tit. 2, sec. 10.

In the present case, therefore, the cause of action did not accrue until eviction was consummated.

"Eviction" is defined to be "the loss suffered by the buyer of the totality of the thing sold, or a part thereof, occasioned by the right or claim of a third person."

Civil Code, art. 2476.

It is decided that this text does not require actual dispossession. Any holding by the vendee by a title different from that acquired from his warrantor, falls within its terms. As, if the disturbed vendee purchases in the paramount title to quiet his possession, he thereby sustains a constructive eviction, and has a right of action upon his warranty.

Pothier des Ventes, No. 96.

Landry *v.* Garnet, 1 Rob., 362.

Thomas *v.* Clement, 11 Rob., 397.

Before proceeding to apply these principles to the facts, it is necessary premise that those facts appear from two distinct species of evidence. First, the record evidence, consisting of the certified transcript of proceedings of the District Court of Rapides parish, in the suit of Calvit *v.* Mulhollan. And second, the parol and documentary evidence returned with the commission.

This distinction is important, in view of the peculiar form of the instruction given below. If that instruction can be supported upon the facts disclosed by the record evidence alone, we concede that it is unobjectionable in point of form. If, however, it is predicated in any the least degree upon the parol testimony, it is fatally defective; and for this plain reason, that it takes the testimony from the jury, who are the sole judges of its credibility, by a peremptory charge that the statutes of limitations constituted a bar.

The law should have been given to the jury hypothetically, leaving them to find the facts.

Budd *v.* Brooke, 3 Gill, 198.

Calvert *v.* Coxe, 1 Gill, 95.

Charleston Ins. Co. *v* Corner, 2 Gill, 410.

Ragan *v.* Gaither, 11 G and J., 472.

It may also be premised, that in an action for breach of warranty, the record of the suit in which the title paramount was litigated is conclusive evidence of the eviction, in cases where the warrantor had notice, and an opportunity to defend his vendor's title. Where no such title was given, the record is still *prima facie* evidence, not only of the validity of the paramount claim, but of its extent, &c.

Civ. Code, art., 2493, 2494.

Clark *v.* Carrington, 7 Cranch, 308.

It may well be argued, that in the present case the defendant had such notice.

Field *v.* Gibbs, Pet. C. C. R., 155.

Roberts *v.* Caldwell, 5 Dana, 512.

Wernwag *v.* Pawling, 5 G. and J., 500.

But, whether notice or not, the record is properly in evidence.

Hanson *v.* Buckner, 4 Dana, 251.

Owings *v.* Hull, 9 Peters, 627.

Now, first examine the facts of this case, as they appear from the record evidence, independent of the parol testimony, to determine whether these facts alone do not give the plaintiff a right of action, to which the statute of limitations is *not* a bar.

The litigation upon the paramount title commences in 1838. In 1843, the District Court renders an adverse judgment, and the defeated claimants appeal. In 1845, the appellate court affirms this judgment as to two of the claimants, but reverses it as to the two youngest, and decides that they are entitled to recover each an undivided eighth.

Pausing an instant at this point, we ask whether this decree, even if it had been in terms a *final* judgment, would, by the law of Louisiana, have *per se* amounted to an eviction.

The answer is clearly that it would *not*.

Murray *v.* Bacon, 7 New S., 271.

The recital in the final judgment, "whereas his legal representatives have been evicted by the decree of the court," &c., when taken in connection with the decree to which it refers, obviously does not use the term in its strict, technical sense. If a technical eviction is meant at all, it can only be by relation.

But the decision of the appellate tribunal was not a final decree, but, on the contrary, preliminary and prospective merely, contemplating further proceedings, and prescribing future action as a condition precedent to a complete eviction.

So far, then, there is no eviction—therefore, no breach of warranty—therefore, no right of action; and hence we may safely assume that down to November, 1845, limitations have not commenced to run against us.

Resuming the inspection of the Louisiana record, (to which, for the present, we are confining ourselves,) from the time the decree of the appellate tribunal was filed in the District Court in November, 1845, nothing appears which has the remotest relation to an eviction, until 1853—the intervening minutes showing no more than that the suit was still pending in the District Court, revived in the name of the "legal representatives" of the deceased defendant, Mulhollan.

On the 30th May, 1853, the present plaintiff, with his now deceased co-plaintiff, for the first time appear in the cause, make themselves parties in their capacity as "heirs and universal legatees" of the original defendant, adopt his answers and defences, and ask for judgment over against the warrantors, in case judgment be rendered in favor of plaintiffs.

And on the next day (31st May) there is a ₁ entry of what purports to be ₎ final judgment of the District Court, reciting the decree of the court above, and also reciting the fact, which for the first time appears, that "the legal representatives of Charles Mulhollan have purchased the claims of said Calvits for the sum of $2,400."

Within the principles laid down, this recital furnishes at once a state of facts such as by the *lex loci* amounts to an eviction, and gives a right of action upon the warranty.

See cases before cited, 1 Rob. 362, and 11 R., 397.

The record, however, does not furnish the date at which the purchase was made. That it does not do this expressly, is certain. That it does not fix the exact date by implication, is equally clear.

It is true, the judgment in awarding interest upon the $850, the sum which it entitles the Flowers's to recover against the warrantors, does compute from the 14th November, 1846. But it does not connect this date in any manner with the previous recital of the purchase; and it would be a violent construction, certainly, which should force such a connection, independent of any extrinsic information. And it is to be borne in mind, that we are now considering the case upon the record evidence alone.

Nor is it for us to supply the omission caused by the silence of the record with respect to time. It is for the defendant, who relies upon limitations, to show that we are barred. It is enough for us to show, that at all events, upon the 31st May, 1853, we had a cause of action, without being required to prove how long before we might have had it.

If, then, it appears by the record alone, that upon the 31st May, 1853, the litigation upon the paramount title was brought to a close by final judgment, and that upon that day we stood as purchasers of the paramount claims, with nothing in the record to show that we were such purchasers long anterior to that time, we submit that the instruction given by the court below, that we were barred by limitations, was erroneous, inasmuch as we commenced one suit within less than three years from said date, to wit: on the 3d November, 1855.

We now proceed to consider the case, as it may be modified by the parol testimony.

The depositions of J. A. Calvit and Judge Ogden disclose the fact that the relinquishment of the paramount claims was made on the 14th November, 1846, and that the purchase was made by Thomas O. Moore, the acting executor of Mulhollan.

Upon this evidence, the attempt is made to set up the bar of limitations against the heirs, by dating their right of action back to the time when a voluntary payment was made by the executor.

There is nothing to show that the heirs authorized this arrangement concerning their land, or that they were privy t. it in any manner. And we submit, that they were not bound nor concluded by it, directly or indirectly, until the 31st May, 1853, when the final judgment, rendered the day after their appearance in the suit, by reciting the payment, showed that they had ratified and adopted it as their own.

Until adopted by the heirs, the purchase of the Calvits' claims by Moore, although doubtless made in "good faith," and as the "best arrangement that could be made for the estate," yet not being within the scope of his executorial powers, was no more the act of the heirs than if made by an entire stranger for purposes of speculation.

Brush *v.* Ware, 15 Pet., 93—111.

Code La., art. 1652.

Anderson's Executors *v.* Anderson's Heirs, 10 La., 35.

The doctrine is well settled, that an action upon warranty may be brought by the executors, provided the breach be during the lifetime of the testator; but if the breach occur after his death, the action can only be maintained by the heirs.

1 Parsons Cont., 109.

Rawlings *v.* Adams, 7 Md., 49.

It is plain, therefore, that no right of action accrued upon this contract of warranty, until the 31st May, 1853. The executors could not have sued: 1st, because the payment by them did not constitute an eviction at all, they not being authorized to represent the land; and 2d, because, even if

such payment did constitute an eviction, the breach was not until *after* the death of Mulhollan, the warrantee, in which case the heirs alone could maintain an action.

Nor could the heirs have sued, for they had not then ratified the voluntary and gratuitous act of the executors, and made the payment their own.

There being no parties competent to sue, limitations could not run.

Fishwick *v.* Sewell, 4 H. and J., 393.

The counsel for the defendant in error made the following points:

I. This is an action of trespass on the case on a promise, otherwise called an action of assumpsit.

The cause of action of the plaintiff in error, if any he had, accrued, and limitations began to run on the 14th of November, 1846, when payment was made by the executor of Mulhollan in behalf of the estate. And therefore more than three years had elapsed before the bringing of this action on the 3d of November, 1855, and the claim is barred by the acts of limitation of the State of Maryland of 1715, ch. 23, sec. 2, and 1818, ch. 216, sec. 1.

Beatty's Adm'rs. *v.* Burnes's Adm'rs., 8 Cranch, **98.**

Murdoch *v.* Winter, 1 H. and G., 471.

Frey *v.* Kirk, 4 G. and J., 509.

Sprague *v.* Baker, 17 Mass., 591.

Loomis *v.* Bedel, 11 N. H., 74.

Day *v.* Chism, 10 Wheat., 452.

2 Greenleaf's Ev., sec. 244.

Foote *v.* Burnet, 10 Ohio Wilcox, 330.

II. The judgment of the District Court of the State of Louisiana, in favor of Charles H. Flowers and Alice Flowers against Christopher Keller and Francis Foreman, for $850, with interest from the 14th of November, 1846, the date of the payment by Mulhollan's executor, is void, the court below having no jurisdiction in the case, the defendants never having been served with process, and never having had notice or knowledge of the case. The judgment against Keller is by a

*Flowers* v. *Foreman.*

wrong name. His true name was Christian, not Christopher Keller, and he was in fact dead at the time when it was rendered, although that fact does not appear by the record. But the plaintiff in error does not sue on this judgment, or claim thereunder. If the judgment were valid, his cause of action would be merged therein, and suit would have to be brought on the judgment, and the form of action would be debt, not assumpsit.

Harris *v.* Hardeman, 14 How., 339.

Mr. Justice WAYNE delivered the opinion of the court.

We shall cite such facts in this record as are necessary to show the relations and obligations of the parties to it, under the laws of the State of Louisiana, and in that of the Circuit Court of the United States for the district of Maryland, from which it has been brought here by writ of error.

The plaintiffs are the heirs and universal legatees of Charles Mulhollan, to whom Keller & Foreman sold a tract of land, with an obligation of warranty. On the same day that the conveyance was executed to Mulhollan, he conveyed by deed a part of the land to Reuben Carnal, with a like clause of general waranty.

Afterwards, William J. Calvit, Elizabeth G. Calvit, James A. Calvit, and Coleman W. Calvit, filed their petition in the District Court for the parish of Rapides, alleging that they were the heirs of their mother, the lawful wife of their father, Anthony Calvit, and that they were entitled to half of the land, as it had been purchased by their father during their mother's coverture with him, which superinduced between them a community of acquests or gains—there having been by them no stipulation to the contrary. And they allege, also, that their father, as their natural tutor, had sold the land, for a part of which they petitioned, while they were minors, in violation of their rights.

They further state, that Charles Mulhollan and Reuben Carnal were in possession of the land, and ask that one-half of it might be adjudged to them, as the heirs of their mother.

Being thus brought into court, Mulhollan and Carnal filed

their answers. Each deny the allegations of the plaintiffs—
Carnal citing Mulhollan into court as his warrantor; and
Mulhollan alleges, in his answer, that he had purchased the
land from Keller & Foreman, with a general warranty. He
asks that they might be cited, to defend him in his title and
possession; and that, as they were absentees from the State
of Louisiana, he prayed for the appointment of curators ad
hoc, to represent them in the case.

George K. Waters was designated by the court as their cu-
rator; and, upon being summoned, appeared in that relation,
and, assuming to be the attorney of Keller & Foreman, filed
an answer for them. Keller & Foreman, however, never had
any knowledge of the suit, nor any notice of the appointment
of Waters as curator.

Waters, in his answer, cited in warranty the legal representa-
tives of A. J. Davis, deceased, from whom Keller & Foreman
had bought the land.

The legal representatives of Davis appeared, by George
Purvis, their curator, and in their turn cite in warranty, An-
thony Calvit, their ancestor's vendor, who was *the father of
the plaintiff*, by whom the land had been sold to Davis. An-
thony Calvit appeared by attorney, denying the petitioner's
allegations.

After several continuances, the case was brought to trial in
the District Court, and judgment was entered for the defend-
ants. The plaintiff carried it by appeal to the Supreme Court
of Louisiana. The judgment of the court below was reversed,
on the 26th November, 1845. That court decided that the two
youngest petitioners, James and Coleman Calvit, were each
entitled to one undivided eighth of the land in controversy;
but that William J. Calvit and Elizabeth G. Calvit were exclu-
ded from recovering, on account of the prescription of ten and
twenty years, which Mulhollan had pleaded in his answer.
The court then remanded the cause to the District Court, for
further proceedings on the question of improvements, costs,
and profits, and of damages between the warrantors.

Afterwards, on a rehearing, the Supreme Court directed a
further inquiry to be made, for the purpose of ascertaining

whether the price received for the land by the father and tutor of the plaintiff had been applied to the payment of the debts of the community of their father and mother; "and it ordered, if any of it had been, that James and Coleman Calvit should contribute in proportion to their rights in the land; and that, in the mean time, no writ of possession should issue until they had paid the amount which the court below might determine to be due by them."

After the rendition of the Supreme Court's decree, Charles Mulhollan died. His will was admitted to probate on the 11th July, 1846. On the same day his death was suggested, and an order was passed to renew the suit in the names of his legal representatives. Three days afterwards, Thomas O. Moore, the executor of Mulhollan, paid to James and Coleman Calvit $2,400 for a relinquishment of their claims to the land in controversy, and of all their rights in the judgment which had been rendered in their favor.

No further proceedings were had in the suit from the 11th November, 1846, to the 30th May, 1853, when the plaintiffs in this suit made themselves parties, as heirs and universal legatees of their uncle, Charles Mulhollan, the original defendant. They adopted his answers and defences, and ask for judgment against his warrantors, Keller & Foreman; which was given on the following day, in the District Court, to which the cause had been remanded, for those purposes only heretofore stated.

Such have been the relations of the parties named in the record, in the District and Supreme Court of the State of Louisiana. Whatever was the liability of Keller & Foreman, as warrantors of Mulhollan, they never were subjected to the jurisdiction of the District Court, by any valid proceeding from it, to enable that court to carry that liability into a judgment in favor of Mulhollan, their vendee, or in favor of his representatives, Charles and Alice Flowers.

When Mulhollan answered the petition of the Calvits, and asked that Keller & Foreman should be cited into court as his warrantors, no citation for that purpose was served upon them to do so. One was issued for and served upon Waters, to represent them as curator ad hoc; but that was insufficient

to give to the District. Court jurisdiction to pronounce judgment against them, though that court did do so. Hence it is that this action of assumpsit was instituted, to recover damages alleged to have been sustained upon a breach of the warranty of Keller & Foreman to Mulhollan.

In the declaration in this action, it is recited that Keller & Foreman had conveyed to Mulhollan a tract of land, with warranty, and that the Supreme Court had adjudged that James and Coleman Calvit were each entitled to an undivided eighth of the same. They were declared to have entered into the same, and evicted Mulhollan from it; in consequence of which, Mulhollan, to regain his possession, had paid to James and Coleman Calvit twenty-four hundred dollars, for the relinquishment of their claims to the land. To this action, the defendant pleaded non assumpsit; and it was agreed in writing, by the counsel in the cause, that, under such issue, all errors in pleading should be mutually waived, and that the defendant was to be permitted, under it, to rely upon the statute of limitations.

Upon the trial of the case, that point was urged. The statutes of Maryland of the years 1715, ch. 23, and 1818, ch. 216, entitled, Acts to avoid suits at law, were insisted upon, as constituting a bar to the recovery of the plaintiffs. Such was the instruction given by the court.

There is no error in the instruction. More than three years had elapsed after their right of action had accrued, before the plaintiffs brought their suit. Their uncle had been judicially declared not to be entitled to a part of the land by the decree of the Supreme Court. That of itself was an eviction under the law of Louisiana, though the court postponed giving a writ of possession to the parties in whose favor its decree was made, for the purpose of having certain points ascertained in which all the parties to the cause were interested—no one of them more so than Mulhollan himself. The date of the Supreme Court's decree in favor of the two Calvits is 26th November, 1845, shortly after Mulhollan died. The District Court had not then adjudged those points for which the case had been remanded to it.

Before that was done by the court, and soon after Mulhollan's death, his active executor, Moore, on the 14th November, 1846, bought from the two Calvits their claim to that part of the land which had been decreed to them by the Supreme Court. This itself was an eviction, though the Supreme Court, in deciding upon these rights to the land, had withheld from the Calvits a writ of possession. It is not necessary, to constitute an eviction, that the purchaser of land should be actually dispossessed. (11 Rob., 397.) It was also ruled, in the same case, that an eviction may take place when the vendee continues to hold the property under a different title from that transferred to him by his vendor. In this instance, Mulhollan's representatives held the title to a part of the land, originally bought by him from Davis as a whole, by the purchase of James and Coleman Calvit's undivided eighth.

The same conclusions had been previously ruled by the same court in Auguste Landry *v.* Honore Felix Gamel, 1 Robinson, 362. The court's language is: "It is true that, by the authorities to which we have been referred, the doctrine is well established, that, in order to constitute an eviction, it is not absolutely necessary that the purchaser should be actually dispossessed. That eviction takes place, although the purchaser continues to hold the property, if it be under a title which is not that transferred to him by his vendor, as if he should extend the property, or should acquire it by purchase from the true owner." (Pothier, Vente, No. 96; Troplong, Vente, No. 415; Toullier, vol. 16; Continuation by Duvergier, vol. 1, Nos. 309, 313.) Other cases in the Louisiana reports have the same conclusions, but we do not think it necessary to cite them. The rulings in 1 and 11 Robinson announce it to be the uncontested doctrine in the Louisiana courts, that actual dispossession is not necessary to constitute an eviction, and that, if the purchaser holds under another title than that of his vendee, an eviction may take place. Those decisions cover the case in hand in both particulars, and they show that the purchaser of the land had suffered an eviction by the decree of the Supreme Court, in the meaning of that term in the law of Louisiana, though a writ of possession had not been issued.

But if that was doubtful, it is certain that the eviction was accomplished when the executor of Mulhollan bought, for the benefit of his testator's estate, the claim to the land which James and Coleman Calvit had acquired.

Mulhollan, by his will, granted to his executors, immediately on his death, full and entire seizin and possession of all his estate, to hold and manage the same until all the legacies given by him were paid over and fully discharged. The signification of a delivery of seizin to an executor will be found in articles 1652, 1664, 1666, 1667, of the Civil Code, and in 35 of Re-vised Statutes, 3. These articles provide that a testator may give the seizin of the whole or of a part of his estate to his executor, accordingly as he may express himself. The seizin usually continues for a year and a day, but may be prolonged by an act of the court, and may be terminated whenever the heirs shall deliver to the executor a sum sufficient to pay the movable legacies. The seizin of the executor is distinct from and paramount to the seizin which the law vested in the heir immediately on the death of his ancestor, and the heir can only deprive the executor of it by providing security for the per-formance of his obligations. The executor represented the reception, in so far as respects creditors and legatee. (Bird *v.* Jones, 5 Ann. La. Rep., 645.) When the testamentary exec-utor submitted to the title of the Calvits, and paid them for it, that was an eviction, which gave to him a right of action in behalf of the succession against the warrantors of his testa-tor. His right of action passed to the heirs of Mulhollan when he delivered the succession to them, or whenever it came to their hands by due course of law. It was delivered to them, and the executor's seizin terminated in the year 1847, though the precise day does not appear in the record. The heirs, upon its termination, were reinstated in all the rights which had been temporarily administered by the executor. Those rights will be found in articles 934, 935, 936, of the Code. One of the effects of those rights is to authorize the heir to institute all the actions which the testator could have done, to prosecute to a conclusion such as had been com-menced by the testamentary executor, and to commence all

**actions** which he had failed to institute belonging to the succession. (15 Lou., 527; 7 Rob., 183; 2 Ann., 339; 7 Ann., 367.) In such a suit by the heirs, the same defences may be made which could have been applied if the executor's seizin had been continued. But in this instance, neither the executor nor the heirs, the plaintiffs in the suit, took any legal step to carry to a judgment Mulhollan's citation of Keller & Foreman in warranty in the District Court of the parish of Rapides, until the 30th May, 1853, more than fourteen years after the eviction of Mulhollan had occurred, and after the rights of the Calvits had been bought. The heirs now, however, seek by this suit in assumpsit in the Circuit Court of the United States for the district of Maryland, to recover damages from Foreman, the survivor of his partner, Keller, for the failure of their warranty to Mulhollan, the suit having been commenced between eight and nine years after their right of action had accrued. The defendant relies upon the statutes of limitation of Maryland as his defence to prevent a recovery. We think it must prevail, and that the court below, in giving to the jury such an instruction, committed no error. We therefore direct its judgment to be affirmed.