## WOOD & SELICK, Inc., v. COMPAGNIE GENERALE TRANSATLANTIQUE.

## A. SALOMON, Inc., v. SAME.

### Nos. 390, 391.

Circuit Court of Appeals, Second Circuit.

Aug. 4, 1930.

Edward J. Garity, Joseph P. Nolan, and Frank T. Hendl, all of New York City, for appellant.

Henry N. Longley, Bigham, Englar, Jones & Houston, and Ezra G. Benedict Fox, all of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

These two appeals involve only the question of the statute of limitations. The libels were filed for damage to certain consignments of goods, shipped on the respondent's vessels under bills of lading, issued in France, and containing the following clause (Rule 18): "All litigations arising out of interpretation or execution of this contract or bill of lading shall be judged according to the French law at the Tribunal of the place indicated in the bill of lading, and the owners of the ship and claimants formally declare to accept its competency." The bills further provided: "Disputes resulting from the interpretation or execution of this bill of lading shall be submitted to the court provided for in Rule 18 of the Commerce Court of the Seine."

The respondent proved the French law by its relevant sections, and by a competent

French lawyer, and maintained that under it the limitation of one year was made a condition of the obligation, in the sense that the lapse of that period extinguished the right. Hence it argued that the local statute did not apply as part of the lex fori, and that as the libels had not been filed within a year, though within the time allowed by the local law, the suits must fail. The following sections of the French Codes are pertinent. Section 433 of the Commercial Code, which is under the title, "Prescription," provides: "The following are barred by prescription. All claims for delivery of goods, or for damages for average losses, or delay in the carriage of them, one year after the ship's arrival." This is all that there is in the Commercial Code, but the Civil Code under chapter five, which concerns the "discharge" (extinguishment), "of obligations," provides, section 1234: "Obligations are discharged" (s'éteignent), "by payment (or performance)—by novation—by voluntary release—by set-off—by merger—by loss of the subject matter—by being void or by rescission—by the effect of a condition in avoidance, which has been explained in the preceding chapter; by prescription which will form the subject of a special title." The only evidence in the record of that special title is the following two sections: Section 2220, "The right of prescription may not be waived" (renoncé), "beforehand; prescription which has been already acquired may be waived"; section 2223, "Judges may not of their own motion base their decisions upon grounds which depend upon prescription."

The testimony of the expert was exceedingly confusing, not due to any fault of his, but inevitable because of the attempt to import into the French law the refined notion which pervades our own, of a right barred of remedy, but still existing in nubibus. He based his opinion upon the reasoning that since section 1234 of the Civil Code provides that "prescription" shall extinguish or discharge obligations, and since section 433 of the Commercial Code establishes a prescriptive period of one year for suits like those at bar, it follows that the French law extinguished these obligations. When faced with the sections from the Civil Code dealing with prescription, he became however less clear. It was apparent that time alone did not for all purposes extinguish the obligation, for the defendant must claim the defense, and might renounce it by his conduct after the prescription was complete. Without in any sense meaning to question his competence, in the upshot his testimony does not materially help us. Each party relies upon a part here and a part there; we shall not cite it, nor indeed need we consider it, for it seems in the end to leave the interpretation of the Codes much as it would be on the words themselves.

■ We may at the start lay aside the clauses in the bills of lading, which apparently were intended to confine any litigation over the contracts to a French court. The respondent does not pretend that, so construed, these would be valid, and it is of course well settled that they would not. Mutual Reserve Fund v. Cleveland Woolen Mills, 82 F. 508 (C. C. A. 6); Nashua River Paper Co. v. Hammermill, 223 Mass. 8, 111 N. E. 678, L. R. A. 1916D, 691; Benson v. Eastern Building & Loan Ass'n, 174 N. Y. 83, 66 N. E. 627; U. S. Asphalt Co. v. Trinidad, etc., Co. (D. C.) 222 F. 1006; Kuhnhold v. Compagnie Generale Trans. (D. C.) 251 F. 387; Williston, § 1725. If they were not so intended, but only meant to stipulate that the obligations of the contract were to be interpreted and executed according to French law, they did not incorporate the French law of prescription. "Interpretation" certainly cannot be stretched so far, and "execution" will serve no better. Its natural meaning is "performance," including excuses for performance; it would wrench that meaning quite out of measure to include within it the period within which suits must be brought. Without deciding how plainly a carrier must declare itself on such a question, it suffices to say that the contracts were not definite enough, and we cannot reverse the decrees except by force of the French law itself.

■■ It is well settled that ordinarily the statute of limitations of the forum controls. Walsh v. Mayer, 111 U. S. 31, 4 S. Ct. 260, 28 L. Ed. 338; Flowers v. Foreman, 23 How. 132, 149, 16 L. Ed. 405; Canadian Pacific Ry. v. Johnston (C. C. A. 2) 61 F. 738, 745, 25 L. R. A. 470. But a statute of the place where the right arose may impose upon it a condition which goes to its substance, and, when this is so, the condition will be observed elsewhere. This has ordinarily come up in the case of statutory rights in which the limitation was imposed by the same statute which created the right itself. The Harrisburg, 119 U. S. 199, 7 S. Ct. 140, 30 L. Ed. 358; Arnson v. Murphy, 109 U. S. 238, 3 S. Ct. 184, 27 L. Ed. 920; Atl. Coast Line v. Burnette, 239 U. S. 199, 36 S. Ct. 75, 60 L. Ed. 226; Engel v. Davenport, 271 U. S. 33, 46 S. Ct. 410, 70 L. Ed. 813. But it is not necessary that the limitation should be in the same statute, so the purpose be

plain to make it a condition. Davis v. Mills, 194 U. S. 451, 24 S. Ct. 692, 48 L. Ed. 1067. Since in France all obligations are presumably created by force of statute, we have therefore to decide how far the French law imposes such a condition upon the obligations created by bills of lading.

The embarrassment .is, as we have said, that we have to interpret another system of law according to notions wholly foreign to it. It is indeed easy to say that as the French law recognizes nothing but the extinguishment of an obligation by lapse of time, we have nothing more to do than take all obligations· there created as subject to such a condition. But the question does not seem to us quite so simple as that, for it is apparent that the right is not always extinguished, as, for example, if the obligor renounces the prescription, or fails to claim it. Our own statutes of limitation do in fact extinguish the right so far as they extinguish all remedies, for a right without any remedy is a meaningless scholasticism, and the distinction we make is more than formal only in that the applicable period varies with the law of the forum where the suit chances to be laid. At any rate it is permissible for us to say that if the assumed extinguishment which the French law imposes, is itself subject to conditions which assimilate it to our ordinary statutes of limitation, it makes no difference that it speaks of "extinguishment." We are to decide whether the defense falls within one class or the other recognized by us, and in that inquiry we are not necessarily concluded by the terms used; we may assimilate it rather to matter of remedy, just because it has those conditions which would so determine it in our law.

It appears to us that this is the case here. For example, as mere matter of procedure the defendant under our law need not plead the limitation, when it is a condition upon the right. Atlantic Coast Line v. Burnette, 239 U. S. 199, 36 S. Ct. 75, 60 L. Ed. 226; Stern v. La Compagnie Generale (D. C.) 110 F. 996; McRae v. N. Y., etc., Ry., 199 Mass. 418, 85 N. E. 425, 15 Ann. Cas. 489. See, also, Hill v. Supervisors, 119 N. Y. 344, 23 N. E. 921. The rule is otherwise when it merely bars the remedy, and section 2223 of the French Civil Code pro tanto makes the defense like that of our ordinary statutes. While this perhaps does not go very far, it tends to put the French law in accord with the libelants' position, and we must not look for demonstration.

There is, however, a more .solid basis for our conclusion. Even in form it is, strictly speaking, never possible to revive the old right, at least in cases of a liability in contract or tort. Revival rests in any event upon historical peculiarities of our procedure, and does not exist in cases of tort. Hurst v. Parker, 1 B. & Ald. 92; Oothout v. Thompson, 20· Johns. (N. Y.) 277; Armstrong v. Levan, 109 Pa. 177, 1 A. 204; Nelson v. Petterson, 229 Ill. 240, 82 N. E. 229, 13 L. R. A. (N. S.) 912, 11 Ann. Cas. 178; Holtham v. Detroit, 136 Mich. 17, 98 N. W. 754; Williston § 186. While there are exceptions when the defendant has misled the plaintiff who has acted upon the strength of the promise, in such cases the question is really whether these facts create a contract not to use the defence, though this is usually disguised under the term, "estoppel." Moreover, even in cases of contract the new promise, which is said to revive the debt, does not really do so. Rather it creates a new obligation for which the old liability is regarded as a sufficient consideration. Hyleing v. Hastings, 1 Ld. Raym. 389, 421; Green v. Crane, cited in Williams v. Gun, Fortescue, 177, 181; Bell v. Morrison, 1 Pet. 351, 372, 7 L. Ed. 174; Phillips v. Phillips, 3 Hare, 281, 299, 300; Williston, § 160. Thus a mere acknowledgment is ordinarily not enough unless a promise can be inferred from it (Williston, §§ 166, 167), and partial payment is good only in so far as a promise can in the same way be implied (Williston, § 174). Again, under most authorities the promise must be made before action brought (Bateman v. Pinder, 3 Q. B. 574; Bradford v. Spyker, 32 Ala. 134; Martin v. Jennings, 52 S. C. 371, 29 S. E. 807; Williston, § 197), which would not be true if the statute gave only a defence that could be "renounced," or "waived." While, indeed, it must be acknowledged that action is usually brought on the old debt, this is certainly anomalous, and should not disguise the substance.

Thus it appears that even in cases of contract, where alone the right can be revived, our statute more truly treats it as extinguished than if the defence were merely "waived." We do not know what is meant by the language of section 2220 of the French Civil Code, relating to prescription, for we are not advised how the obligor may "renoncer" the defence; but certainly it is difficult to suppose that the right is more completely gone than under our law. We are surely not to assume that it is necessary to make a new contract under the French law, and yet that is the substance of what we ourselves require. If we were to guess, we should assume that any one of those situa-

944

tions which we vaguely class as "waiver" would serve, which they do not with us. Thus we are justified in treating "prescription" under section 1234 as more nearly analogous to a statute "barring the remedy" than to one "extinguishing," or "a condition upon," the right. The respondent had the burden of establishing the defense, and at least on this record we cannot say that it has proved that the French law goes far enough.

So far as we can find, Huber v. Steiner, 2 Bing. N. C. 202, is the only case which has dealt with the question. There the court considered section 1234 of the French Civil Code and held, though apparently with the aid of more evidence as to the Civil Law than we have in this record, that the defence went only to the remedy. It is true that Tindal, C. J., also went upon the fact that the parties had not both been in France for the whole period of the "prescription," following the theory of Story (Conflict of Law, § 582). This Lord Brougham said, in Don v. Lippmann, 5 Clark & F. 1, was the ground of the decision, but, with submission, it was not the only one, and the case must stand as an authority for the libelants at bar. On this record, whatever might be the conclusion on other evidence, the District Judge was right.

It is not necessary therefore to decide how far the rule adopted by us in Canadian Pac. Ry. v. Johnston, 61 F. 738, 25 L. R. A. 470, is still the law. It has indeed the support of considerable other authority, and, being fathered by Story, it has possibly become too strong now to be overruled. We cannot forbear saying, however, that except in so far as, in application to a given situation, it results in the correct interpretation of the lex loci contractus, it is extremely difficult to defend in principle. We leave that question open for the future when it shall arise, for the time being wishing to do no more than disclaim any intention of approving Canadian Pac. Ry. v. Johnston, by our citation of it in another connection.

Decrees affirmed.