## BOURNIAS
### v.
### ATLANTIC MARITIME CO.,
### Limited et al.
### THE ATLANTIC OCEAN.

United States District Court
S. D. New York.
Jan. 15, 1954.

Lebovici & Safir, New York City, Herbert Lebovici, New York City, of counsel, for libellant.

McNutt & Nash, New York City, James E. Freehill and Donald Allen, New York City, of counsel, for respondents.

CONGER, District Judge.

This matter was tried upon special issues raised by exceptive allegations to the amended libel and the reply to such allegations.

The libellant, a seaman, seeks recovery against the respondents, his employers, upon three causes of action.

The first is based upon the Labor Code of the Republic of Panama and in reality involves four different obligations: (a) for the legal indemnity due to crewmen where the registry of a Panamanian vessel is changed (Art. 127); (b) for vacation pay (Art. 170 as amended by Law No. 7 of Jan. 26, 1950); (c) for overtime pay (Art. 154) and (d) for Sunday and holiday pay (Art. 166).

The second is based upon Sections 596, 597 and 599, Title 46 U.S.C.A. and involves purported illegal advances and withholdings in libellant's wages in December, 1948 and January and March, 1949.

The third is based upon Sections 596 and 597 of Title 46 U.S.C.A. and involves a penalty of double wages for wages, not timely paid, sought in the first and second causes of action.

The exceptive allegations set forth that the libellant terminated his employment on December 27, 1950 at which time the right to the sums sought in the first cause of action accrued; that the libel was filed on December 29, 1952, more than two years after the cause of action accrued; that the Panamanian Labor Code provides:

"Article 621. Actions for dismissal of a workman for just cause prescribe (i. e. are barred by the statute of limitations) within two months; for imposing upon him any disciplinary penalty; for asserting claims for unjustifiable dismissals or against the imposition of a disciplinary penalty; and for justifiable separation from work.

"Article 623. Actions and rights arising from labor contracts not enumerated in Article 621, shall prescribe (i. e. shall be barred by the statute of limitations) in a year from the happening of the events from which arise or are derived the said actions and rights."[1]

It is alleged, therefore, that libellant's first cause of action is barred by such provisions of the Panama Labor Code (Article 623). If this is so it follows that the third cause of action, which rests principally on the first, also is barred pro tanto.

The respondents plead laches to the second cause of action upon which, of course, a part of the third depends.

1. These translations, including interpolations, were made by respondents' expert.

The libellant's reply in effect denies that his causes of action are barred by the Panama Labor Code or laches.

Carlos Berguido, Jr., testified on behalf of respondents on the Law of Panama. He is a member of the Bar of Pennsylvania and was formerly Consul and Consul General of Panama in Philadelphia. Although he is not a member of the Panama Bar, he has frequently been called upon as an expert on International and Foreign Law, particularly Latin-American and is coauthor of various writings on the Panamanian Law, including, among others, "Manual for Masters and Seamen on Ships under the Panamanian Flag", "Supplement No. 1" thereto, and "Leyes Maritimas Panameñas." His qualifications were not questioned by libellant.

Berguido testified on direct examination that the Panama Labor Code (Código de Trabajo) became effective on March 1, 1948 and governs the rights of seamen on Panamanian ships; that Article 623 governs the time for commencing such an action as is alleged here, it being one of the class not enumerated in Article 621; that the provisions of Article 623 are a matter of substance and not of procedure.

On cross-examination of Berguido, libellant's counsel used Berguido principally to approve translations of Panama law which counsel put in evidence without, for the most part, eliciting from Berguido any opinion on their value or lack of value.

Since libellant has no expert, most of the statutory law introduced is left for me to ponder.

An evaluation of libellant's offerings follows.

Article 624 of the Panama Labor Code provides that the "suspension and the interruption of the statute of limitations shall be governed insofar as it may not be in conflict with this code by what the civil code provides in that respect."

The provisions of the Civil Code with regard to limitations are found in Articles 1698 to 1713 thereof. Various periods of limitations are specified for different classes of actions but none concerns, as far as I am informed, the present suit under the Labor Code. The only significant provision is found in Article 1711 which states that "The limitation with respect to actions is interrupted * * * by any act of recognition of the debt by the creditor." Assuming[2] that Article 1711 is not in conflict with the Labor Code, I fail to see how it affects libellant's claim. His reply makes no mention of recognition of the debt. It is true that paragraph "Thirteenth" of said reply alleges that Articles 621 and 623 of the Labor Code are not all the law on the subject but "that by virtue of other, different and additional law of the Republic of Panama, the said Statute of Limitations pleaded in the exceptive allegations, if applicable, has been tolled or suspended by virtue of the facts applicable to the libellant's cause of action." If such allegation was intended to embrace recognition of the debt, libellant failed to use it for he failed to put in any evidence to support it.

Berguido's attention was directed to expressions contained in "Tratado Elemental De Derecho Civil" by one Marcel Planiol, to the effect that limitations must be pleaded and a judge may not dismiss, *sua sponte*, an action untimely commenced.

Berguido testified that Planiol is a Frenchman who is undoubtedly an authority on Spanish Civil Law but is not a recognized authority on Panamanian Law. He agreed, nevertheless, that his statements were proper principles of Panamanian Civil Law. He said, however, that they had no application to the Labor Code and, in effect, could not be thought implicit in said Code by reference to Article 624 because they would conflict with it.

---

2. Berguido said on re-direct that Articles 1698–1713 of the Civil Code were brought "into play" by Article 624 of the Labor Code.

As I mentioned before, I did not have the benefit of expert opinion from libellant's side but, nevertheless, my notion is that the principles expressed by Planiol—good ones according to Berguido—are implicit in the Labor Code.

Articles 439 to 442 of the Labor Code deal with "Exceptions" which are, according to Article 439, "Any fact[s] by virtue of which the laws ignore the existence of an obligation or declare it to be extinguished if it once existed * *." Article 440 states that "Exceptions shall be proposed at the latest during the course of the hearing" but "The exception of the statute of limitations ('prescription') may be presented even up to judgment on appeal ('in second instance'); but if it is interposed after the termination of the hearing, it shall not be considered until the proponent has paid * * * a fine * * *." Article 441 provides that the "judge shall rule upon the exceptions in the judgment" and Article 442 provides that "Whenever the judge may consider the facts which constitute an exception as proved, even though it may not have been interposed nor pleaded, he must recognize it in the judgment and decide the suit in accordance with the recognized exception; nevertheless, in respect of the exception of the statute of limitations ('prescription') it must be pleaded."

■ Berguido said on re-direct that "they (Articles 439–442) would apply if this action were pending in a labor court in Panama; but not here." I agree that procedural requirements of the labor court in Panama are not to be followed here. The Articles were not called to Berguido's attention for such purpose. They were introduced as evidence of the fact that the prescription provisions of the Panama Labor Code are not regarded as of a substantive nature, i. e. a condition on the right but rather merely bar the remedy. Libellant's view is highly persuasive. It is inconsistent to require procedurally the plea of the statute of limitations against an obligation which has been extinguished.[3] Cf. Wood & Selick v. Compagnie Generale Transatlantique, 2 Cir., 1930, 43 F.2d 941.

Support for this notion is found in Article 1043 of the Civil Code which provides that "Obligations are extinguished (Las obligaciones se extinguen): By payment or performance; By the loss of the subject matter; By the forgiveness of the debt; By the merger of the rights of the creditor and debtor; By set-off; By Novation."

Berguido approved the translation of Article 1043 but was not asked to express an opinion on its significance. No similar provisions of the Labor Code have been called to my attention and I feel it is proper to assume that there are none. If this is so, it must be that obligations under the Labor Code are extinguished in the manner of Article 1043 of the Civil Code and are not "extinguished" by the prescription provisions of the Labor Code.

In Wood & Selick v. Compagnie Generale, supra, a similar situation arose. There the prescription statutes of France were pleaded against claims arising out of damage to a certain consignment of goods. The respondent proved French law by an expert but "It was apparent that time alone did not for all purposes extinguish the obligation, for the defendant must claim the defense, and might renounce it by his conduct after the prescription was complete." 43 F.2d at page 942. The Court held, therefore, that "* * * we are justified in treating 'prescription' under section 1234 as more nearly analogous to a statute 'barring the remedy' than to one 'extinguishing,' or 'a condition upon,' the right." 43 F.2d at page 944.

I likewise feel justified in regarding prescription under Article 623 of the Panama Labor Code as barring the remedy rather than extinguishing the right.

3. I gather that "prescriberan" as found in Art. 623 of the Labor Code does not denote extinguishment.

After the trial of this issue and while the matter was under consideration certain matters, thought to be related, were called to counsel's attention. Up to this point there appeared to be an assumption on the part of everybody (my part and libellant's part, at least) that if Article 623 of the Panama Labor Code did not extinguish the right, then it was no defense because of the general rule that the law of the forum controls the question of limitations, Restatement of Conflict of Laws, § 603 et seq.; Wood & Selick v. Compagnie Generale Transatlantique, supra, and that such law of the forum was beneficial to libellant.

It was thereupon pointed out to counsel that although the suit was in admiralty and the law of the forum was laches, it would not necessarily follow that libellant would receive by analogy the benefit of the six year statutes in New York, C.P.A. §§ 48(1) and/or 48(2), because under Section 13 of the Civil Practice Act, the shorter statutes of Panama would apply. It would then appear that the analogy of the state law as applied to laches would be the Panama limitation.

In any event, the exceptive allegations are not pleaded to handle the defense in this fashion, and for this reason and for another matter pointed out to counsel, I do not decide it.

■ This other matter involves a theory set forth in Rose v. United States, D.C.E.D.N.Y., 1947, 73 F.Supp. 759. There action based upon the New York wrongful death statute was commenced in admiralty. The two-year period of limitation provided in such statute was pleaded by respondents, but the libellants contended that laches was applicable and that they should be permitted to excuse their delay. Judge Kennedy, in a well-reasoned opinion, held "that a remedy under the New York statute is barred in admiralty, independently of the question of laches, after the expiration of two years from the date of the decedent's death, because it is a state-created right borrowed by the admiralty, and also because the two-year period of limitation should be enforced according to its letter as a matter of federal policy, whether that limitation can be correctly described as a matter of 'substance' or of 'procedure'." 73 F.Supp. at page 764.

I believe the reasoning of the Rose case is applicable here. The obligations sought in the first cause of action arise strictly out of the Panama Labor Code. The Code carries its own statute of limitations. Art. 623. Whether or not it may be denominated "substantive" or "procedural"—and I have thought that it is of the latter nature—it should be given effect in a suit on the admiralty side in the federal court. See Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S. Ct. 89, 66 L.Ed. 210 and cf. The Sydfold, 2 Cir., 1936, 86 F.2d 611. I hold, therefore, that the first cause of action is barred by Article 623 of the Panama Labor Code.

### Laches

The second cause of action, to which the respondents plead laches, involves $85. It is alleged that on December 2, 1948 at Norfolk there was advanced to libellant the sum of $70 before the same was earned; that on January 16, 1949 at Newport News, said amount was withheld, offset and deducted from earned wages in violation of Title 46, Sections 596, 597 and 599. Similar allegations are made with respect to $15, advanced on January 16, 1949 and withheld March 7, 1949 at Norfolk.

■ Ordinarily, the one asserting the defense of laches has the burden of pleading and proving prejudice from the delay. Where, however, the libel shows that the state statute of limitations has run[4], prejudice from the delay is presumed and the libellant is required to prove facts negativing such presumption. Kane v. Union of Soviet Socialist Republic, 3 Cir., 1951, 189 F.2d 303;

---

4. The analogy of the state statute of limitations is applied in considering laches.

Schiavone-Bonomo Corp. v. Buffalo Barge Towing Corp., 2 Cir., 1942, 132 F.2d 766.

Redman v. United States, 2 Cir., 1949, 176 F.2d 713.

■ It appears to me that the libellant's second cause of action is no more than a simple claim for a seaman's wages despite the purported reliance upon Sections 596, 597 and 599 of Title 46, U.S.C.A.

Section 596 provides for the time a seaman shall be paid his wages after termination of his shipping agreement or discharge and calls for a penalty of two days' pay for each day payment is delayed beyond the time specified. But he seeks here only the wages withheld, which I assume he can get, aside from the question of advances, without benefit of statute. The penalty he seeks in his third cause of action.

Section 597 provides for certain part payments of wages at ports of call prior to the end of the voyage. The factual allegations of the second cause of action do not appear to embrace this Section.

Section 599 makes it a misdemeanor to advance unearned wages to seamen and provides that the ship-owner is not absolved by such advances from paying the full wages when due. As far as I can see there is no civil liability for advances except to the extent that they may not be setoff against seamen's regular wages.

Since it seems, therefore, that this is a claim for wages, the applicable New York statute of limitations would be six years, C.P.A. § 48(1). Even if it were thought to be a liability created by statute, the time would be the same. C.P.A. § 48(2).

■ The second cause of action was not in the libel as originally filed but was added by amendment filed January 26, 1953, about four years after the claim arose.

Under these circumstances, the respondents have the burden of proving laches and there is no presumption of prejudice from the delay.

■ One Michael Hiotakos, head of the insurance claim department of Maritime Brokers, agent of the vessel testified that he endeavored to locate the payroll records, vouchers, etc., of seamen employed in 1948 and 1949 on the vessel but was unsuccessful. They were not to be found in his office nor in the owner's offices in London. He believed they had been destroyed. His office wrote to the owners in an effort to locate the master but he is no longer employed by them.

He said that Maritime Brokers became agent of the ship in December, 1951; that prior to that time S. Livanos & Co., Inc., was agent of the ship; that one Mr. Bugis is President of Maritime Brokers and was an officer of S. Livanos & Co., Inc., which was dissolved. Mr. Bugis went to London and inquired of the London agents for records but he was unable to find any.

Mr. Hiotakos' testimony raises many doubts in my mind. He commenced work with Maritime Brokers in June, 1952 so that he was vague in his knowledge of ownership, the name of the master, who is the owner's representative in London, whether the company had an office in Panama and the like. It seems Mr. Bugis might be more qualified to testify on these questions and he possibly could inform the Court of the disposition of records generally in view of his connection with S. Livanos & Co., Inc.

Mr. Hiotakos said that he "believed" that presently originals of such records are sent to the owners and copies "whenever necessary" are sent to Maritime Brokers, after which they are kept for about two years and then destroyed if Maritime Brokers is so instructed by the owners, or returned to the owners. It may be assumed that some similar disposition of records was made by S. Livanos & Co., Inc., if it ever had them, because its records were turned over to Maritime Brokers in, I suppose, December, 1951 when the latter took over as agent of the ship and these records did not come along. In this light, therefore, the records were out of existence less than three years after the alleged

claims arose, as far as the agent is concerned.

But what of the originals? There is no word from the owners on this. There is only Hiotakos' testimony that he inquired and could not locate any records. There is no clear proof that the master is unobtainable.

In all, I feel that the record is so obscure that I cannot regard respondents as having carried the burden of proving prejudice in connection with the defense of laches. I cannot say they were not prejudiced by the delay but I do not consider it just to bar the libellant's claim upon the respondents' showing here.

Settle a decree in accordance with the foregoing.