John BOURNIAS, Libelant-Appellant,

v.

ATLANTIC MARITIME CO., Ltd., Navegacion Maritime Panama S.A. and the S.S. Atlantic Ocean, her engines, tackle, boilers, etc., Respondents-Appellees.

No. 39, Docket 23124.

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1954.

Decided Feb. 10, 1955.

Lebovici & Safir, New York City, (Herbert Lebovici, New York City, of counsel), for libelant-appellant.

McNutt & Nash, New York City (James E. Freehill and Donald B. Allen, New York City, of counsel), for respondents-appellees.

Before CLARK, Chief Judge, MEDINA and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

Libelant, a seaman, was employed on respondents' vessel at the time she was changed from Panamanian to Honduran registry. As originally filed the libel contained two causes of action. The first was based on several Articles of the Panama Labor Code, under which the libelant claimed an extra three-months' wages payable to seaman upon change of registry, and other amounts for vacation, overtime and holiday pay. The second was for penalties under 46 U.S.C.A. § 596 for failure to pay these amounts promptly.

The respondents filed exceptive allegations asserting, *inter alia*, that the action was barred by the one-year statute of limitations contained in Article 623 of the Panama Labor Code. After an argument on respondents' motion to sustain such allegations, the libelant was permitted to amend his libel to include a third cause of action to recover the amount of advances made to him and deducted from his pay in alleged violation of 46 U.S.C.A. § 599; the exceptive allegations were deemed amended to plead laches to this new claim; and the question of whether the action was barred by lapse of time was set down for a separate hearing.

At this hearing the Court held that the defense of laches, which was treated by Court and counsel as going only to the claim for advances, had not been substantiated, but that the Panama statute of limitations did bar the claims under the Panama Labor Code, and that in con-

sequence the claim for penalties must also fail *pro tanto*. Although the respondents appear to argue that we are free on this appeal to hold the claim for wages barred by laches, if not by limitation, we regard the correctness of the lower Court's decision on the applicability of the Panama statute of limitations as the only issue before us.

Article 623 of the Labor Code of Panama, applicable to Articles 127, 154, 166 and 170 of the Code, upon which the libelant based his first cause of action, reads:

> "Actions and rights arising from labor contracts not enumerated in Article 621 shall prescribe [i.e., shall be barred by the Statute of Limitations] in a year from the happening of the events from which arise or are derived the said actions and rights."[1]

The libelant's employment terminated on December 27, 1950, and since his libel was not filed until December 29, 1952, his first cause of action would be barred by Article 623 if it is controlling in this action.

■ In actions where the rights of the parties are grounded upon the law of jurisdictions other than the forum, it is a well-settled conflict-of-laws rule that the forum will apply the foreign substantive law, but will follow its own rules of procedure. Restatement of Conflict of Laws § 585; Beale, Conflict of Laws § 584.1 (1935); Stumberg, Conflict of Laws 134 et seq. (2d Ed. 1951). While it might be desirable, in order to eliminate "forum-shopping," for the forum to apply the entire foreign law, substantive and procedural—or at least as much of the procedural law as might significantly affect the choice of forum, it has been recognized that to do so involves an unreasonable burden on the judicial machinery of the forum, see Restatement of Conflict of Laws, Introductory Note to Chapter 12, and perhaps more significantly, on the local lawyers involved, see

Ailes, Substance and Procedure in the Conflict of Laws, 39 Mich.L.Rev. 392, 416 (1941). Consequently, for at least some questions the law applied is that of the forum, with which the lawyers and judges are more familiar, and which can be administered more conveniently. In Levinson v. Deupree, 1953, 345 U.S. 648, 652, 73 S.Ct. 914, 916, 97 L.Ed. 1319, it was said that while a federal admiralty court was bound to enforce a foreign right as it found it, it was "not bound beyond that to strive for uniformity of results in procedural niceties with the courts of the jurisdiction which originated the *obligatio*." These are the ground rules which govern a federal admiralty court in enforcing an *obligatio* created by Panamanian law.

■ The general rule appears established that for the purpose of deciding whether to apply local law or foreign law, statutes of limitations are classified as "procedural." Stumberg, Conflict of Laws 147 (1951); Lorenzen, Statutes of Limitation and the Conflict of Laws, 28 Yale L.J. 492 (1919). Hence the law of the forum controls. See Order of United Commercial Travelers v. Wolfe, 1947, 331 U.S. 586, 607, 67 S.Ct. 1355, 91 L.Ed. 1687; Janes v. Sackman Bros. Co., 2 Cir., 1949, 177 F.2d 928. This rule has been criticized as inconsistent with the rationale expressed above, since the foreign statute, unlike evidentiary and procedural details, is generally readily discovered and applied, and a difference in periods of limitation would often be expected to influence the choice of forum. Lorenzen, supra; Stumberg, op. cit., supra. The rule is in fact an accident of history. Lorenzen, supra; see also Developments in the Law—Statutes of Limitations, 63 Harv.L.Rev. 1177, 1187 (1950). And although it may perhaps be explained as a device for giving effect to strong local policies on limitations, this explanation would not satisfy the objections of its critics. Lorenzen, supra. Be all this as it may, this general rule is firmly embedded in our law.

---

1. This translation, including the interpolation, is as given by the respondents' expert, and seems not to be questioned by libelant.

But as might be expected, some legislatures and courts, perhaps recognizing that in light of the rationale of the underlying conflict-of-laws doctrine it is anomalous to classify across-the-board statutes of limitation as "procedural," have created exceptions to the rule so categorizing such statutes. A legislative example are the so-called "borrowing statutes" which require the courts of the forum to apply the statute of limitations of another jurisdiction, often that where the cause of action arose, when the forum's statute has been tolled. See Note, Legislation Governing the Applicability of Foreign Statutes of Limitation, 35 Col.L.Rev. 762 (1935). A court-made exception, and the one with which we are concerned here, is that where the foreign statute of limitations is regarded as barring the foreign right sued upon, and not merely the remedy, it will be treated as conditioning that right and will be enforced by our courts as part of the foreign "substantive" law. See Beale, Conflict of Laws §§ 604.3, 605.1 (1935). Such exceptions operate *pro tanto* to give the result which commentators have advocated.

It is not always easy to determine whether a foreign statute of limitations should be regarded as "substantive" or "procedural," for the tests applied by the courts are far from precise. In The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, the Supreme Court held "substantive" a limitation period contained in a wrongful death statute, emphasizing that "the liability and the remedy are created by the same statutes, and the limitations of the remedy are therefore to be treated as limitations of the right," 119 U.S. at page 214, 7 S.Ct. at page 147. It now appears settled that limitation periods in wrongful death statutes will be regarded as "substantive." Restatement of Conflict of Laws § 397. And the rule of The Harrisburg has been stated to apply not merely to rights to sue for wrongful death, but to any statute-created right unknown to the common law. See Zellmer v. Acme Brewing Co., 9 Cir., 1950, 184 F.2d 940; Lewis v. R. F. C., 1949, 85 U.S.App.D.C. 339, 177 F.2d 654; Ford, Bacon & Davis, Inc. v. Volentine, 5 Cir., 1933, 64 F.2d 800. The rule was also carried a step further in Davis v. Mills, 1904, 194 U.S. 451, 24 S.Ct. 692, 694, 48 L.Ed. 1067. Suggesting that in the instances where courts have found some statutes of limitation to be "substantive" they were seeking a "reasonable distinction" for escaping from the anomaly of the rule that limitations are generally to be regarded as "procedural," Mr. Justice Holmes continued, "The common case [where limitations are treated as "substantive"] is where a statute creates a new liability, and in the same section or in the same act limits the time within which it can be enforced, whether using words of condition or not. The Harrisburg, 119 U.S. 199 [7 S.Ct. 140], 30 L.Ed. 358. But the fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created, and accompanies the obligation everywhere. The same conclusion would be reached if the limitation was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right." See also Maki v. George R. Cooke Co., 6 Cir., 1942, 124 F.2d 663, 146 A.L.R. 1352, where the test of "specificity" was found satisfied by a separate statute imposing a limitation on all statutory rights.

Two other approaches to the problem were suggested in our opinion in Wood & Selick, Inc., v. Compagnie Generale Transatlantique, 2 Cir., 1930, 43 F.2d 941. First, that the foreign law might be examined to see if the defense possessed the attributes which the forum would classify as "procedural" or "substantive"; that is, for example, whether the defense need be pleaded, as a "substantive" period of limitations need not be in this country. Second, the foreign law might be examined to see if the op-

eration of limitation completely extinguished the right, in which case limitation would be regarded as "substantive." Still other tests are suggested by Goodwin v. Townsend, 3 Cir., 1952, 197 F.2d 970—namely, whether the foreign limitation is regarded as "procedural" or "substantive" by the courts of the foreign state concerned, and possibly whether the limitation is cast in language commonly regarded as "procedural."

■ Which, then, of these various tests should be applied here? It appears to us that it should be the one which Davis v. Mills, 1904, 194 U.S. 451, 24 S. Ct. 692, 48 L.Ed. 1067, suggests for use where the right and its limitation period are contained in separate statutes, viz.: Was the limitation "directed to the newly created liability so *specifically* as to warrant saying that it qualified the right"? 194 U.S. at page 454, 24 S.Ct. at page 694, italics supplied. To be sure Davis was concerned with the statute of limitations of a sister state (Montana), but there is nothing in Mr. Justice Holmes' opinion to suggest that the application of the test there laid down is limited to that type of case. And where, as here, we are dealing with a statute of limitations of a foreign country, and it is not clear on the face of the statute that its purpose was to limit the enforceability, outside as well as within the foreign country concerned, of the substantive rights to which the statute pertains, we think that as a yardstick for determining whether that was the purpose this test is the most satisfactoy one. It does not lead American courts into the necessity of examining into the unfamiliar peculiarities and refinements of different foreign legal systems, and where the question concerns the applicability of a code provision of a civil law country, this test seems more appropriate than any of the others.

Even though the limitation period here is contained in the same statute as enacts the right sought to be enforced, The Harrisburg, supra, still, as noted later, because of the breadth of the Panama Labor Code, as contrasted with the limited scope of the statute involved in The Harrisburg, the limitation period should not automatically be regarded as "substantive." Nor would it be appropriate to make this case turn on the fact that the right sued upon was unknown at common law (Zellmer and other cases cited, supra) when we are dealing with the statutes of a country where the common law does not exist. And we do not think that it should matter whether the foreign court has interpreted its statute as being "procedural" or "substantive" for some other purpose, which may have happened in Goodwin, supra, or whether the foreign practice requires that limitation be pleaded, Wood & Selick, supra. "The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against." Cook, Substance and Procedure in the Conflict of Laws, 42 Yale L.J. 333, 337 (1933). No more should it matter whether the foreign right is extinguished altogether by the mere passage of time, or is instead only repressed into a dormant state, subject to "revival" if the defense of limitation is waived or renounced, Wood & Selick, supra. Such a distinction would generally be difficult to apply, and might also lead to results out of the pattern of the precedents; that is, if the defense could be waived under foreign law, a limitation period might be considered "procedural" even though it was contained in a specific statute giving a remedy for wrongful death. Such limitations, however, are almost invariably held "substantive." Restatement of Conflict of Laws § 397. And whether the wording of the limitation period seems more like "procedural" or "substantive" language, Goodwin, supra, does not appear to have been generally considered important.

It is true that the test we prefer leaves much to be desired. It permits the existence of a substantial gray area be-

tween the black and the white. But it at least furnishes a practical means of mitigating what is at best an artificial rule in the conflict of laws, without exposing us to the pitfalls inherent in prolonged excursions into foreign law; and it permits us to avoid the short-comings discussed above. We conclude, therefore, that the "specificity" test is the proper one to be applied in a case of this type, without deciding, of course, whether the same test would also be controlling in cases involving domestic or other kinds of foreign statutes of limitations.

■■ Applying that test here it appears to us that the libelant is entitled to succeed, for the respondents have failed to satisfy us that the Panamanian period of limitation in question was specifically aimed against the particular rights which the libelant seeks to enforce. The Panama Labor Code is a statute having broad objectives, viz.: "The present Code regulates the relations between capital and labor, placing them on a basis of social justice, so that, without injuring any of the parties, there may be guaranteed for labor the necessary conditions for a normal life and to capital an equitable return for its investment." In pursuance of these objectives the Code gives laborers various rights against their employers. Article 623 establishes the period of limitation for *all* such rights, except certain ones which are enumerated in Article 621. And there is nothing in the record to indicate that the Panamanian legislature gave special consideration to the impact of Article 623 upon the particular rights sought to be enforced here, as distinguished from the other rights to which that Article is also applicable. Were we confronted with the question of whether the limitation period of Article 621 (which carves out particular rights to be governed by a shorter limitation period) is to be regarded as "substantive" or "procedural" under the rule of "specificity" we might have a different case; but here on the surface of things we appear to be dealing with a "broad," and not a "specific," statute of limitations. And this being

a case brought on the admiralty side of the federal court, we are of course limited to considering the foreign law material before us, and we may not take judicial notice of anything beyond that. Black Diamond S. S. Corp. v. Robert Stewart & Sons, 1949, 336 U.S. 386, 396–397, 69 S.Ct. 622, 93 L.Ed. 754.

We therefore conclude that under the proper test the respondents have not made out their defense. In so holding we reach the same result as we did in the similar situation involved in Wood & Selick, 1930, 43 F.2d 941.

For reasons already discussed, we think this conclusion is not affected, on the one hand, by the testimony of the respondents' expert to the effect that in his opinion Article 623 would be regarded under Panamanian law as a "substantive" limitation upon the libelant's rights under the Panama Labor Code, or, on the other hand, by the libelant's showing that under Panamanian law this statute of limitations has some of the same attributes as such statutes do under our law, and that the libelant's rights under the Panama Labor Code may not be altogether extinguished by the passage of the period of limitation. And we consider quite inconclusive the argument that the prescription period of Article 623 is addressed to both "Actions and rights." Nor in reaching our conclusion have we been influenced by the lower Court's statement that it felt justified in regarding Article 623 as "procedural." Even treating this as a finding, despite the Court's view, which we discuss in a moment, that the respondents should prevail whether Article 623 be regarded as "substantive" or as "procedural," we would not consider ourselves bound by it. For that conclusion seems to have been reached without the Court having addressed itself to the "specificity" rule, so that the finding would rest on a wrong legal premise and should therefore be disregarded.

In conclusion, the Trial Judge, in finding for the respondents, held that when an admiralty court enforces a foreign-created right, it must also enforce the

158

foreign statute of limitations, whether that statute be denominated "substantive" or "procedural." The court's decision was based on Rose v. United States, D.C.E.D.N.Y.1947, 73 F.Supp. 759, where the Supreme Court's decisions in The Harrisburg, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, and Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210, considered in conjunction with Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, were read to require this result. These first two cases seem to us, however, to be simply examples of the rule that the limitation periods applicable to wrongful death actions are generally to be regarded as "substantive," a result which might often be explained in terms of the "specificity" test. The Harrisburg was so read in Davis v. Mills, supra. And Guaranty Trust Co. v. York, requiring federal courts in diversity cases to apply state limitation periods, has no application in cases such as this, which are not governed by the rule of Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, as the Supreme Court took pains to point out in Levinson v. Deupree, 1953, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319, and we may therefore not safely assume that the Guaranty Trust Co. holding expresses a rule of federal policy which would be applicable here. It is true that the language of Levinson v. Deupree, supra [345 U.S. 648, 73 S. Ct. 916], saying that federal admiralty courts enforcing a foreign-created right are not bound to "strive for uniformity of results in procedural niceties" with the foreign court, may be taken to suggest that where the issue concerns statutes of limitations, which even though "procedural" are not "procedural niceties," there should then be uniformity in results. But we think the Court meant to express no opinion on this point. In any event, we would not consider that the Court had intended to abandon so traditional a doctrine as the one involved here, unless it had dealt with the issue more directly.

Reversed.