**In the Matter of the Complaint of K.S. LINE CORP., as Owner of the M/V SWIBON, for Exoneration From or Limitation of Liability.**

**No. A83–477 Civ.**

United States District Court, D. Alaska.

Sept. 24, 1984.

Ronald L. Bliss, Bradbury, Bliss & Riordan, Inc., Anchorage, Alaska, for petitioner.

David R. Millen, Bogle & Gates, John M. Conway, Atkinson, Conway, Bell & Gagnon, Allen McGrath, McGrath & Associates, Donald A. Burr, Burr, Pease & Kurtz, Anchorage, Alaska, for claimants.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

THIS CAUSE comes before the court on the issue whether the size of the limitation of liability fund should be controlled by United States or Korean law. This court held an initial hearing on the issue October 21, 1983. At that time, petitioner established to the court's satisfaction that Korean limitation of liability law should control the size of the fund. Nevertheless, because the hearing was held on shortened time, the court granted claimants additional time to submit evidence and brief the issue.

This limitation action arises out of a September 9, 1983 collision between the M/V SWIBON and the M/V PAN NOVA on the high seas in the Bering Sea near Unalaska Island, Alaska. The M/V PAN NOVA sank as a result of the collision, but the M/V SWIBON was able to continue its voyage to the United States and Canada. Both vessels were cargo vessels registered in the Republic of Korea. The M/V SWIBON is owned by K.S. Line Corp., which has filed this limitation action. Claims have been filed by Pan Korea Shipping Co. and Pan Ocean Bulk Carriers, Ltd., owners of the M/V PAN NOVA, Hyundai Pipe of America, Inc., and Sammi Line Co., Ltd. All parties except Hyundai are Korean corporations.

As noted above, the issue before the court is whether petitioner, K.S. Line, can claim the benefit of Korean law to limit its liability. Korean limitation law is derived from the Brussels convention of 1924 [1] and

---

1. The full title is International Convention for the Unification of Certain Rules Relating to the

limits an owner's liability based on the ship's tonnage. Under Korean law, petitioner's liability would be limited to approximately $250,000. If, however, the court finds that the size of the limitation fund is controlled by United States law, based on the value of the vessel, then the limitation amount would be approximately $9,000,000.

Petitioner argues that Korean limitation law is "substantive" and therefore applies in this case. *See Black Diamond Steamship Corp. v. Robert Stewart & Sons, Ltd.,* 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754 (1949) (*The NORWALK VICTORY*). Alternately, it argues that this court should adopt a conflict of laws approach using the interest analysis relied on by the Supreme Court in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). In response, claimants argue that Korean limitation law is procedural and therefore *The NORWALK VICTORY* mandates that the size of the limitation fund be governed by United States law. In addition, both sides have submitted affidavits of Korean law experts in support of their positions that Korean law is either procedural or substantive.[2]

### The Interests Analysis Issue

The Supreme Court in *The NORWALK VICTORY* held that if the foreign limitation on liability attaches to the right, *i.e.,* is substantive, then if foreign substantive law would otherwise apply, the foreign limitation on liability, being part of that law, would apply as well. It stated:

> On this point we agree with the Court of Appeals—and disagree with the District Court—that if, indeed, the Belgian limitation attaches to the right, then nothing in *The Titanic,* 233 U.S. 718 [34 S.Ct. 754, 58 L.Ed. 1171] stands in the way of observing that limitation. The Court in

Limitation of Liability of Owners of Sea Going Vessels, signed at Brussels, August 25, 1924.

**2.** Claimants have requested a hearing on the issue whether Korean law is substantive or procedural. The decision to hold such a hearing is discretionary. Fed.R.Civ.P. 44.1. The court finds that a hearing would not be useful in this case. Both parties have submitted extensive

that case was dealing with "a liability assumed already to exist on other grounds." *Id.* at 733 [34 S.Ct. at 756]. *But if it is the law of Belgium that the wrong creates no greater liability than that recognized by the Convention of 1924, we cannot, without more, regard our own statutes as expanding the right to recover.* Any other conclusion would disregard the settled principle that, in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the law of the place where the tort occurred.

336 U.S. at 395–96, 69 S.Ct. at 627 (emphasis added).

In adopting this view, the Court nevertheless adhered to the position taken by Justice Holmes in *The TITANIC,* that the language of the United States' limitation of liability statute required that it be applied to all limitation actions filed in the United States, whether filed on behalf of foreign or domestic vessels. *See Oceanic Steam Navigation Co. v. Mellor (The TITANIC),* 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1913).

■ To explain further, this court finds that the Court in *The NORWALK VICTORY* adopted a "two-tier" approach to determining the size of the limitation fund. At the first level, the court must apply the United States' limitation of liability statute, *see* 46 U.S.C. §§ 183–85, as required by *The TITANIC.* This creates the United States fund level as an upper limit on the size of the fund. Although the court in *The NORWALK VICTORY* did not spell out *The TITANIC's* continued applicability to all cases, it is implicit in the court's reasoning.

■ At the second level, this court must then look to applicable choice of law rules

affidavits on the Korean law issue. It will not assist the court to observe the demeanor of law experts or to have cross examination. Therefore, because the cost of a hearing to the court and the parties outweighs its limited benefit, the court will decide the issue on the record before it.

to determine which country's substantive law should apply to the case before it. If the foreign limitation law is part of the foreign country's substantive law, then the court, in applying foreign substantive law must apply the limitation on recovery as well. This is the holding of *The NOR-WALK VICTORY*, stated in the language emphasized above.

■ Petitioners argue subsequent Supreme Court decisions indicate it has abandoned the procedural/substantive distinction of *The NORWALK VICTORY* as a basis for choice of law decisions and has adopted an interest, contacts, and expectations approach. *See Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Although they do not address the issue, petitioners appear to argue that the court should rely on interest analysis at the first level, that is, to determine whether the United States statute setting the fund size should be applied at all. The court must reject this argument.

The court finds there is no inherent bar to applying choice of law principles to the statute governing the size of the limitation fund, even though the statute nominally is "procedural." Nevertheless, where Congress has addressed and decided the choice of law problem, "the court must give effect to its intentions." *Lauritzen*, 345 U.S. at 579 n. 7, 73 S.Ct. at 927 n. 7; *Romero*, 358 U.S. at 382, 79 S.Ct. at 485. The Supreme Court in *The TITANIC* determined that Congress had addressed the issue, and that Congress had mandated that foreign claimants using United States' courts be subject to its limitations regarding the size of the fund. 233 U.S. at 732–34, 34 S.Ct. at 755–56; *see also Lauritzen*, 345 U.S. at 591–92 & n. 27, 73 S.Ct. at 932–33 & n. 27. If there was any doubt that Congress intended the domestic liability limitation to apply to all proceedings in the United States, it was erased when Congress amended the

limitations statute in 1936 so that it expressly applied to foreign, as well as domestic, vessels. *Id.* at 591 n. 26, 73 S.Ct. at 932 n. 26. Therefore, because Congress has addressed the choice of law issue, this court must in all limitation proceedings apply U.S. limitation law, including that part of the statute setting the size of the limitation fund.

### Procedure for Deciding Choice of Law Issue

■ Although this court is precluded from performing a contacts or interest analysis at the first level of law determination, it finds such an analysis is proper at the second level of decision-making, that of determining which foreign substantive law to apply. As noted above, the Supreme Court in *The NORWALK VICTORY* held that if the foreign limitation "attaches to the right," this court should apply the limitation as part of that foreign law. 336 U.S. at 395, 69 S.Ct. at 627. The Court, in its analysis then stated that, if the foreign limitation statute was purely procedural, then United States law would apply:

If, on the other hand, the Convention merely provides procedural machinery by which claims otherwise created are brought into concourse and scaled down to their proportionate share of a limited fund, we would respect the equally well settled principle that the forum is not governed by foreign rules of procedure.

*Id.* at 396, 69 S.Ct. at 627.

Justice Frankfurter further noted, as this court has also discovered, that the line between what is procedural and what is substantive is rarely clear. He suggested, however, that courts should turn to a policy-based conflicts analysis when facing problems in applying the procedural/substantive analysis:

Nor do we mean to imply that these apparently clear-cut alternatives are exhaustive. A limit which attaches not to an individual's right of recovery but to the aggregate claims arising from a given tort can be said to be "attached to the right" only in a special sense of that

phrase, and a rule which operates to cut down the amount recoverable by a claimant cannot be fitted within any but a very broad definition of the term "procedure." Whether they are in fact considerations of domestic policy which deserve to be measured against application of the *lex loci delicti* and whether such considerations are as significant where the foreign limitation is lower than our own as where it is higher—these too are questions not now before us in view of the fact that the case is here merely on exceptions to the petition for limitation of liability.

*Id.*[3] Thus, although the parties seem to assume that an either/or decision or whether foreign law is substantive or procedural is required by *The NORWALK VICTORY,*[4] this court finds a strict adherence to the procedural/substantive test is not required.[5]

As a final preliminary issue, this court finds it is unnecessary to decide whether the Korean limitation statute is considered substantive or procedural under Korean law. *See Bournias v. Atlantic Maritime Co.* 220 F.2d 152 (2d Cir.1955). The difficulty of such an inquiry becomes apparent when one notes that all parties admit that the distinction is not one commonly used in the Korean legal system. Rather, the test for whether a limitation is procedural is whether it specifically attaches to the right. *See The NORWALK VICTORY,* 336 U.S. at 395, 69 S.Ct. at 627; *Bournias,* 220 F.2d at 156–57.

*Korean Limitation Law*

■ The Korean legal system is a civil law, not a common law, system.[6] Thus, in Korea both the law creating liability for maritime negligence and limiting this liability are statutory. The relevant law, contained in the Korean Commercial Code, reads as follows:

BOOK V. MARITIME COMMERCE

CHAPTER II. Shipowners

Article 746. (Limited Liability of Shipowners) A shipowner shall be liable in respect of the following matters arising out of a voyage of the ship subject to a limit not exceeding the value of the ship undertaking such voyage and its appurtenances, freight, claims incidental to such ship and freight, and any other accessories to the ship:

1. Damages in respect of losses incurred by a third party due to intentional or negligent fault of the master, seamen, pilots or any other employee of the ship;

2. Damages in respect of losses of goods received for carriage by the master or of other things on board the ship;

. . . .

4. Damages in respect of losses arising out of negligence in navigation in the course of performing a contract of carriage;

. . . .

---

**3.** Although the quoted language is somewhat obscure, the court can find no other purpose to this language other than to invite lower courts to avoid the problems caused by the procedural/substantive test by relying on policy analysis. *See also* Greenman, *Limitation of Liability: A Critical Analysis of United States Law in an International Setting,* 57 Tulane L.Rev. 1139, 1186–92 (1983).

**4.** *See also In the Matter of the Complaint of Bethlehem Steel Corp.,* 435 F.Supp. 944, 947 (N.D. Ohio 1976), *aff'd,* 631 F.2d 441 (6th Cir. 1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981) (using strict procedural/substantive analysis).

**5.** The Sixth Circuit Court of Appeals in *Bethlehem Steel, supra* note 4, while primarily relying on the district court's analysis, also examined policy factors in affirming the district court's decision.

The Supreme Court's subsequent decision in *Romero v. International Operating Co.* further supports the proposition a strict either/or analysis is not required. *See* 358 U.S. at 382, 79 S.Ct. at 485 (holding that interest analysis set forth in *Lauritzen* is applicable to maritime law generally).

**6.** All parties agree that Korean substantive law will govern the liability issue at trial.

Article 747. (Scope of Liability) With respect to the obligations set forth in items 1 through 5 of the preceding Article, total liability therefor shall not exceed an amount equal to 15,000 Won per ton of carrying capacity of the ship.

. . . .

CHAPTER VI.  Collision of Ships

Article 843. (Ship Collisions to which Provisions Apply)  If a collision occurs between ships on the high seas or between a ship navigating on the high seas and a ship navigating in internal waters the provisions of this Chapter shall govern rights to damages for losses arising in respect of such ships and cargo or persons aboard such ships, irrespective of the character of the waters where the collision of ships occurred.

. . . .

Article 845. (Collision due to Negligence of One Party)  If a collision of ships has been caused by the negligence of the crew of one of the ships, the owner of such ship shall be liable to compensate injured parties for damages arising from the collision.

Article 846. (Collision due to Negligence of Both Parties)

(1) If a collision of ships has been caused by negligence of the crews of both ships, the owner of each ship shall be liable for damages in proportion to the relative fault of the respective parties.  In the event that the relative degrees of fault cannot be ascertained, the shipowners shall bear liability for damages in equal shares.

The court finds that the provisions of Chapter VI are intended to create liability for ship collisions at high sea.  The primary purpose of Chapter II is to implement the Brussels Convention of 1924 and limit shipowner liability.  Korean law, however, does not contain the procedural rules need-

ed to implement limitation of liability actions as they are known in this country.  In other words, there is not authority for interpleader, for creating a limitation fund, or any other method for creating a *forum concursus*.  Unlike in the United States, in Korea a shipowner seeking to limit liability cannot use limitation offensively, to preclude future claims.  It can only be used defensively, to limit damages in a suit against it.[7]

It therefore is immediately evident that the Korean limitation statute is not "procedural" as defined in *The NORWALK VICTORY*.  Given that no procedures are in place, it cannot be said that Chapter II "merely provides procedural machinery by which claims otherwise created are brought into concourse and scaled down to their proportionate share of a limited fund."  *See* 336 U.S. at 396, 69 S.Ct. at 627.

Given that the Korean limitation is not strictly procedural, the court must next examine whether the limitation "attaches to the right."  The test the court must apply here is whether the limitation is so specifically directed at the liability in question that it can be fairly said that it "accompanies the obligation everywhere."  *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693, 48 L.Ed. 1067 (1904); *Bournias*, 220 F.2d at 156–57.

The court finds that the Korean limitation or liability statute is sufficiently directed at the right or obligation that it "attaches to the right."  The limitation is contained in Article 747, which explicitly limits shipowner liability for five enumerated obligations listed in Article 746(1)–(5).  The claims at question here—losses incurred by third parties due to the vessel's negligence—are thus directly referenced by the limitation statute.  That the limitation is contained in a separate section of the Commercial Code from the sections creating obligations (Chapter VI) does not prevent the limitation from "attaching."  *Bournias*, 220 F.2d at 155.  Therefore, this court

---

7.  The lack of implementing regulations was apparently caused by an oversight by the Korean Commercial Code Drafting Committee, which assumed that the limitations within the 1924 Brussels Convention were self-executing.

must apply Korean limitation law together with other Korean substantive law.

To the extent that questions exist whether the Korean limitation attaches to the right, an examination of choice of law factors similar to those listed in *Lauritzen* confirms that Korean law is the proper law to apply.[8] First, both vessels involved in the accident flew Korean flags, based their operations in Korea, and were owned and run by Koreans. Thus, the factors of law of the flag, allegiance of the defendant shipowner, and base of operations all point to the application of Korean law. It is also likely that parties contracting with Korean flag ships would expect to be bound by Korean law. Finally, Korea has a significant interest in seeing Korean limitation law applied to Korean ships as part of its interest in protecting the Korean shipping industry.

The interests of the forum are, on the contrary, limited. One claimant is a United States corporation. However, the interests represented in the case remain predominantly Korean, and there is little unfairness in applying to the cargo the law of flag of the carrying vessel.[9]

It is also argued that, because petitioner voluntarily chose the forum to file its limitation action, it is only equitable to apply the forum's law to it. However, a decree in a limitation proceeding is given merely domestic and not international recognition, and claimants who abstain from filing damage claims in the courts of the United States are free to pursue actions in foreign tribunals. *In re Bowoon Sangsa Co.*, 720 F.2d 595, 599 (9th Cir.1983). Therefore, because petitioner cannot control claimants' choice of forum, it cannot be said that petitioner's choice of forum is voluntary. Additionally, applying the Korean limitation will discourage claimants from forum shopping. Perhaps if claimants had believed there was no advantage

to filing claims here, this case would be in Korean courts, clearly the optimum forum from the standpoint of judicial economy.

As a final matter, the court finds the absence of Korean procedure for creating a *forum consursus* does not militate for a different conclusion. It is true that petitioner may, by combining the forum's procedures for creating a *forum consursus* with Korea's limitation law, create a result better than any achievable in Korea. Nevertheless, this fortuitous result would have been of no benefit to petitioner had claimants filed their claims in Korea. Further, even in the absence of implementing regulations in Korea, the Korean limitation statute still represents a policy choice by that country's legislature that liability should be limited. To ignore that limit would be to mock that policy.

Therefore, for the above stated reasons, this court holds that the size of the limitation fund is controlled by Korean law.

Accordingly, IT IS ORDERED:

(1) THAT the extent to which petitioner can limit its liability is controlled by Korean law;

(2) THAT no change is required in the bond currently filed with this court.

---

**8.** Several commentators have suggested alternate factors this court should review in making a limitation of liability choice of law determination. *See* Greenman, *Limitation of Liability: A Critical Analysis of United States Law in an International Setting*, 57 Tulane L.Rev. 1139,
1192 & n. 282 (1983); Staring, *Limitation Practice and Procedure*, 53 Tulane L.Rev. 1134, 1169–72 (1979).

**9.** *See also* Staring, *supra* note 8, at 1172.