**CLIFFS–NEDDRILL TURNKEY INTERNATIONAL–ORANJESTAD; Neddrill 2 B.V.; Neddrill (Nederland) B.V., Plaintiffs,**

v.

**M/T RICH DUKE, her engines, tackle, apparel, etc., in rem; Rich Ocean Tankers S.A.; Fuyo Kaiun Co., Ltd. in personam, Defendants.**

**Civ. A. No. 90–51–JLL.**

United States District Court, D. Delaware.

March 22, 1990.

Peter M. Sieglaff of Potter, Anderson & Corroon, Wilmington, Del., James J. Sentner, Jr. of Haight, Gardner, Poor & Havens and David E. Black of Griggs & Harrison, Houston, Tex., of counsel, for plaintiffs.

Wayne J. Carey of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., Joseph C. Smith and Wendy D. Ciolino of Burlingham, Underwood & Lord, New York City, of counsel, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. BACKGROUND

On January 21, 1990, two ships failed to pass in the night. The tanker Rich Duke, while on a voyage from Puerto Miranda, Venezuela to Delaware City, Delaware, collided with the drillship Neddrill 2. Both ships were damaged. After reducing speed and exchanging radio messages, the Rich Duke continued on to Delaware.

Upon arriving in the territorial waters of Delaware on January 26, 1990, the Rich Duke was arrested pursuant to an *in rem* action filed against the Rich Duke, and an *in personam* action filed against the owner and manager of the Rich Duke. *See* Docket Item ("D.I.") 1. The plaintiffs are Neddrill B.V., the Dutch owner of the Neddrill 2, Cliffs–Neddrill Turnkey International–Oranjestad, the time charterer, and Neddrill (Nederland) B.V., the operator of the Nedd-

rill 2.[1] These actions allege negligence in the operation and running on the part of those in charge of the Rich Duke. *See id.* at 4.

Just before the Rich Duke entered Delaware, however, Rich Ocean Tankers S.A., the Bahamian corporation who owns the Rich Duke, and Fuyo Kaiun Co., Ltd., the Japanese corporation managing the Rich Duke,[2] filed a limitation of liability action in The Netherlands. Defendants now move to vacate the arrest and dismiss the complaint on the grounds of *forum non conveniens*, or alternatively, comity. This Court has jurisdiction under 28 U.S.C. § 1333.

## II. DISCUSSION

### A. FORUM NON CONVENIENS

■ The Supreme Court's decision in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), provides the analytical framework for all *forum non conveniens* analyses. *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42 (3rd Cir.1988); *In re Air Crash Near New Orleans*, 821 F.2d 1147, 1162 (5th Cir.1987), *vacated on other grounds sub nom., Pan American World Airways v. Lopez*, —— U.S. ——, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989); *Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 150 (2d Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980); *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015, 1019 (5th Cir. 1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). *Gilbert* held that if the defendant moving for dismissal establishes the existence of an adequate alternative forum, a district court must then balance the public and private interests involved to determine whether dismissal is warranted. A motion to dismiss should only be granted if the defendant demonstrates that the private interests weigh "strongly" in favor of dismissal, and shows also that the public interests favor the alternative forum. *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843.

Although *Gilbert* was a diversity case concerning a warehouse fire, the *Gilbert* analysis, as clarified by *Koster v. American Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and *Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), is fully applicable to all *forum non conveniens* motions, including *in rem* admiralty actions. *See In re Air Crash*, 821 F.2d at 1163; *id.* at 1163–64 n. 25; *Perusahaan Umum Listrik Negara v. M/V Tel Aviv*, 711 F.2d 1231, 1236 (5th Cir.1983); *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir.1983); *Nordic Regent*, 654 F.2d at 148; *id.* at 153.

■ At the outset, the Court notes that the burden of proof on all elements of the *forum non conveniens* analysis lies with the defendant. *See Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3rd Cir.1989); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3rd Cir.1988); *Tel Aviv*, 711 F.2d at 1240.

### 1. *An Adequate Alternative Forum*

■ This inquiry begins by determining whether the Netherlands is an adequate alternative forum. *See Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22; *Lony*, 886 F.2d at 633; *Lacey*, 862 F.2d at 43. Of course, in order for a forum to be an alternative it must be available for plaintiff to bring suit. This requirement can be satisfied in the present case by requiring the Rich Duke to consent to continued Dutch jurisdiction and to waive certain defenses as prerequisites to dismissal. *See Getafix*, 711 F.2d at 1245; *Tel Aviv*, 711 F.2d at 1239; *Macedo v. Boeing Co.*, 693 F.2d 683, 687 (7th Cir.1982). Indeed, defendants have already submitted to the jurisdiction of the Dutch court and represent that they "will not unilaterally or without consent of the plaintiffs discontinue any of the proceedings...." D.I. 28 at

---

1. This opinion will refer to the collective plaintiffs as "Neddrill."

2. This opinion will refer to the *in rem* defendant, the motor tanker Rich Duke, and the two corporate defendants collectively as the "Rich Duke," unless otherwise specified.

8–9. While this Court may impose additional conditions on dismissal, the court in the Netherlands is clearly available.

Similarly, the Dutch court is an adequate forum. A forum is adequate if the plaintiffs will be treated fairly and will not be deprived of their remedy. *See Piper Aircraft*, 454 U.S. at 254–55, 102 S.Ct. at 265–66; *In re Air Crash*, 821 F.2d at 1165; *Getafix*, 711 F.2d at 1250. The alternative forum need not offer all remedies and benefits of the plaintiffs' original choice. *See Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1484 (9th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988).

Interestingly, the Dutch plaintiffs claim that the Dutch court is not an adequate forum: "The Dutch system doesn't allow depositions. The Dutch system doesn't allow cross-examination by counsel. Under the Dutch system the court decides what issues will be tried and testimony taken on. There is no contemporaneous record and hearsay is freely admitted." D.I. 32 at 11. While the defendants have not introduced any contrary evidence on this point, that failure is excused because these contentions were not raised by plaintiff until oral argument, after the close of all briefing on the motion. Nevertheless, the plaintiff has shown neither that they will be treated unfairly in the Netherlands nor that they will be deprived of a remedy.[3] This Court is not prepared to hold that the inquisitorial system of adjudication, in and of itself, constitutes an inadequate forum, and finds, as other courts recently have, that the Netherlands is an adequate forum. *See, e.g., Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner*, 724 F.2d 1161, 1165–66

(5th Cir.1984) (staying action in United States pending the outcome of related suit in the Netherlands); *Getafix*, 711 F.2d at 1249 (holding that a Netherlands court satisfies the adequate alternative forum requirement).

## 2. Balancing Interests

Having concluded that an adequate alternative forum exists in the Netherlands, it is now appropriate to balance the private and public interests involved in this action.

### a. Private Interest Factors

■ As a foreign plaintiff, Neddrill receives less deference than residents or citizens in their home forum. *See Piper Aircraft*, 454 U.S. at 255–56 & nn. 23–24, 102 S.Ct. at 265–66 & nn. 23–24. The Third Circuit has cautioned that this lessened deference does not mean that a foreign plaintiff's choice of forum is accorded no deference at all. *See Lacey*, 862 F.2d at 45–46; *see also In re Air Crash*, 821 F.2d at 1164 n. 26. Indeed, a district court abuses its discretion if it fails to state exactly what deference it shows a foreign plaintiff. *See Lony*, 886 F.2d at 632; *id.* at 634.

Plaintiffs who choose their home forum receive great deference in that choice because "it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Piper Aircraft*, 454 U.S. at 255–56, 102 S.Ct. at 266. Because mere convenience is the touchstone of the inquiry, the reluctance to defer to a foreign plaintiff's

---

3. Indeed, the remedies in both fora may be the same. A choice of law analysis may indicate that either Dutch, Netherlands Antille, or Aruban limitation law applies. If this is true, and the limitation on recovery is found to be substantive, or applicable after an interest analysis, this Court would be bound to grant the same remedy offered by foreign law. *See In re K.S. Line Corp.*, 596 F.Supp. 1268, 1270–71 (D.Alaska 1984); *see also* Comment, A New Role for Interest Analysis in Admiralty Limitation of Liability Conflicts, 21 Tex. Int'l L.J. 495 (1986) (authored by Ruth L. Rickard). Because the parties have not yet argued the issue, the Court does not now

determine whether the substance/procedure test or interest analysis applies when choosing a limitation rule. A final determination of which law applies is not critical in a *forum non conveniens* motion because unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," *Piper Aircraft*, 454 U.S. at 254, 102 S.Ct. at 265, a change in substantive law should not be considered by the court. *See id.* at 247, 102 S.Ct. at 261; *id.* at 252 n. 19, 102 S.Ct. at 264 n. 19. That is not the case here. *See* D.I. 24 at 15 (the limitation fund in the Netherlands could be as great as ten million dollars).

choice of forum "can readily be overcome by a strong showing of convenience." *Lony,* 886 F.2d at 634.

 Neddrill has brought a maritime *in rem* action. Such an action may only be brought in the district in which the *res* is located. *See Riffe Petroleum Co. v. Cibro Sales Corp.,* 601 F.2d 1385, 1389 (10th Cir. 1979); *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 569 F.2d 330, 333 (5th Cir.1978); Rule C, Supplemental Rules for Certain Admiralty and Maritime Claims. Because an *in rem* action may only be brought in one district, that district, in most cases, should be deemed convenient. When bringing an *in rem* action, therefore, a foreign plaintiff takes a substantial step towards being put on the same footing as a domestic plaintiff, particularly when the suit is brought in the first district the defendant-vessel enters after a collision. *See Tel Aviv,* 711 F.2d at 1240 n. 24. Neddrill has done just that. Accordingly, this Court finds the Neddrill is on substantially "the same footing as a domestic plaintiff." *Lony,* 886 F.2d at 634.[4]

 The Third Circuit recently, and clearly, articulated the standard a district court must utilize when balancing the private interests in a *forum non conveniens* analysis. Twice in *Lony v. E.I. Du Pont de Nemours & Co.* the court stated that in order for a defendant to prevail, the private interest analysis must " 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to a plaintiff's convenience.' " 886 F.2d at 635 *and* 640 (quoting *Lacey,* 862 F.2d at 42 (quoting

*Piper,* 454 U.S. at 241, 102 S.Ct. at 258)). Because admiralty cases constitute no exception to *Gilbert* analysis standards, *see supra,* Neddrill's contention that the Rich Duke must meet a "manifest injustice" standard is rejected.[5]

 Since both the deference due Neddrill's choice of forum, and the burden Rich Duke must meet when evaluating the private interest factors have been determined, the Court now turns to the private interest factors, namely:

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining evidence of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

*Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843, *cited in Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 *and Lony,* 886 F.2d at 634–35 *and Lacey,* 862 F.2d at 46. In considering these factors the Court bears in mind that it "must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe,* 486 U.S. at 528, 108 S.Ct. at 1952. In the present case, the "substance of the dispute" concerns two issues:

---

**4.** The Treaty of Friendship, Commerce and Navigation between the United States and the Netherlands, 8 U.S.T. 2043, provides an additional rationale for this outcome. *See Nordic Regent,* 654 F.2d at 152 ("Although plaintiff was a foreign national, his suit nevertheless presented squarely the question of the district court's power to remit an American plaintiff to a foreign forum" because of the Treaty of Friendship, Commerce and Navigation the United States had with his country.).

**5.** To the extent *Mobil Tankers Co. v. Mene Grande Oil Co.,* 363 F.2d 611 (3d Cir.1966) conflicts with *Lony v. E.I. Du Pont de Nemours &*

*Co.* and *Lacey v. Cessna Aircraft Co.,* the Court adopts the reasoning of the latter two cases. The parties also argued that the location of the accident affects the burden the Rich Duke bears when weighing the private interest factors. As noted above, *Gilbert* and its progeny apply to all *forum non conveniens* motions. Neither *Gilbert,* nor any case following, make the location of an accident determinative of the defendant's burden, or set a separate burden to be applied only in maritime actions. The collision's location may effect other factors, however, such as the availability of witnesses and evidence, and choice of law. *See, e.g., supra* (discussing choice of law).

responsibility for the collision and the extent of the compensable damages.

The Rich Duke contends that trial in the United States would inconvenience the parties because United States law does not apply. The parties, therefore, would need to retain experts in foreign law in addition to their American counsel. Argument on the choice of law issue focused almost exclusively on the place of the collision. However, "[m]aritime law ... has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." *Lauritzen v. Larsen*, 345 U.S. 571, 582, 73 S.Ct. 921, 928, 97 L.Ed. 1254 (1953). Seven factors the Supreme Court found relevant in *Lauritzen* are: the place of the wrongful act; the law of the flag; allegiance or domicile of the injured; allegiance of the defendant shipowner; place of contract; inaccessibility of the foreign forum; and, the law of the forum. *See Lauritzen*, 345 U.S. at 583–92, 73 S.Ct. at 928–33. *Lauritzen* was a Jones Act case, but its "broad principles of choice of law and the applicable criteria ... were intended to guide courts in the application of maritime law generally." *Romero v. International Terminal Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *see also Swedish Telecom Radio v. M/V Discovery I*, 712 F.Supp. 1542, 1545 (S.D.Fla.1989) (*Lauritzen's* seven factors have been found to be applicable "in the analysis of all maritime choice of law situations....") (citing *Gulf Trading & Transp. Co. v. Vessel Hoegh Shield*, 658 F.2d 363, 366 (5th Cir.1981)). Specifically, this interest analysis has been applied to choice of law problems arising from marine collisions. *See, e.g., In re K.S. Line Corp.*, 596 F.Supp. 1268, 1271–72 (D.Alaska 1984).

There is a dispute between the parties concerning the location of the collision. Rich Duke argues that the accident occurred in Aruban territorial waters, while Neddrill premises its arguments on a collision on the high seas. The parties cite only one piece of evidence,[6] which is an admission on the part of the Neddrill's Rotterdam counsel: "the collision occurred within the territorial waters of Aruba, as was confirmed parties Neddrill by the state government." D.I. 28 at 3. Neddrill tries to downplay the significance of this statement, but never contradicts it: "I cannot in good faith make a representation to the Court whether it was within or without territorial waters. It is certainly on the fringe." D.I. 32 at 13. In fact, Neddrill acknowledges both that the statement was made and that it is accurately reported by the Rich Duke: "The only thing that the counsel for the plaintiffs stated before the Dutch court as is recited by Mr. Smith's papers, was that the local, and I will say attorney ... had signified that it happened in the territorial waters." *Id.*[7] Based on the only evidence submitted on this point, the Court holds, for the purposes of this motion only, that the collision did in fact occur in Aruban territorial waters. This factor, therefore, favors the application of the law of Aruba.

▆▆▆▆ The law of the flag criteria is not overly useful in the present choice of law analysis. The flag of the Neddrill 2 is unknown, although it is owned by a Dutch concern. The Rich Duke flies the flag of the Bahamas and is owned by a Bahamian corporation. Similarly, the allegiance or domicile of the Neddrill 2 adds a factor favoring the application of Dutch law, while the allegiance of the Rich Duke does the same for Japanese law. Where contacts analysis reveals that no one sovereign has an overriding interest in applying its

---

**6.** The only other relevant evidence submitted was not referred to by either party: the approximate coordinates of the collision as reported by the master of the Rich Duke. *See* D.I. 25, Exhibit C, p. 4. The coordinates are 12–31N by 70–13W. While these coordinates appear to be clearly within the twelve mile territorial limit of Aruba, because the parties themselves have not interpreted or vouched for the accuracy of this report, the Court will not rely on it.

**7.** The Court notes that the issue of the location of the collision was raised in every brief submitted for this motion, and that neither party was taken by surprise when it was raised at oral argument.

law to an action arising out of a collision, the law of the place of the collision should apply. *See Ishizaki Kisen Co. v. United States*, 510 F.2d 875, 879 (9th Cir.1975) (noting that under *Restatement (Second) of the Conflicts of Laws* § 145, the jurisdiction where a collision takes place will normally have the most significant interest in applying its law); *In re Compania Gijonesa de Navegacion*, 590 F.Supp. 241 (S.D.N.Y.1984); *The Mandu*, 102 F.2d 459 (2d Cir. 1939).[8] In the present case, the place of the collision is the only common denominator between the parties. The parties voluntarily placed themselves in the jurisdiction and cannot claim surprise that its law will be applied to them. Finally, the country where the collision takes place has a strong interest in regulating conduct within its borders. *See Atalanta Corp. v. Polskie Linie Oceaniczne*, 683 F.Supp. 347 (S.D.N.Y.1988). Based on the evidence currently in the record, the Court concludes that Aruba has the greatest interest in applying its law. Accordingly, for the purposes of this motion only, the Court will assume Aruban law applies to the matter at hand.

 The Rich Duke, therefore, is correct in its assertion that, in considering this motion, this Court must assume that it would have to apply foreign law if the motion to dismiss were denied. This conclusion weighs against retaining the case because of the added inconvenience and expense to the parties of possibly having to rely on foreign experts to provide substantive law while trying a case in a forum unfamiliar with that law.[9]

Almost every other private interest factor indicates that trial in the United States would be more convenient than a trial in the Netherlands. The South Korean crew of the Rich Duke joined the vessel in the United States, *see* D.I. 24 at 8, 11, so travel here cannot be considered too inconvenient for any crewmember called to testify. *Cf. Tel Aviv*, 711 F.2d at 1240 n. 25

(convenience of the crews are not normally accorded great weight). If they testify, translation would have to be provided in either fora; it is uncontested that not one crewmember of the Rich Duke speaks Dutch. *See* D.I. 24 at 8. The master of the Rich Duke speaks English, but not Dutch. Neddrill 2's crew is a mix of Dutch and American, *see* D.I. 26 at ¶ 7, and four of Neddrill's employees who were on board at the time of the accident are from Texas. *See* D.I. 27 at ¶ 4. Both ships' written records are in English and would have to be translated for trial abroad. It will be more convenient for both parties to produce most, if not all, evidence pertaining to liability in a trial in the United States.

Concerning damages, surveys of the Rich Duke were conducted in the United States, indicating that those records are here and in English. *See* D.I. 24 at 10; D.I. 26 at ¶ 15; *cf. Lony*, 886 F.2d at 639 (the need for translation is a relevant factor). The Rich Duke claims that both parties have Dutch experts, but, except for the added cost to the parties, the convenience of experts is not of particular importance in the calculus. *Cf. Tel Aviv*, 711 F.2d at 1240 n. 26 (noting that maritime experts, in particular, are accustomed to traveling around the world to testify). The Rich Duke is being repaired in nearby Baltimore. *See* D.I. 26 at ¶ 16. Similarly, the Neddrill 2 will be repaired in the United States, making records of her damages available and in English. *See* D.I. 26 at ¶ 18. Considering the location and language of all the evidence relevant to damages, trial in the United States would be more convenient, and probably less expensive, than in the Netherlands.

Thus, while the Dutch court may have been the only forum in which the Rich Duke could have brought an admiralty action, *see* D.I. 28 at 10, there is little in the private interest analysis that makes the

---

8. The finding that the collision took place in Aruban waters precludes adopting Neddrill's contentions based on *communis juris*.

9. At the close of oral argument, Neddrill argued that the applicable law is not foreign to this Court because "both the Netherlands and Aruba have adopted the International Regulations for the avoidance of collisions at sea and the IMO recommendations with respect thereto." D.I. 32 at 17. The Court will not adopt or evaluate this assertion without further briefing by the parties.

Netherlands a more convenient forum for the trial of this case. Accordingly, the Rich Duke has failed to show that a trial in the United States would be inconvenient, and the Court finds that the private interest factors indicate that the motion to dismiss should be denied.

b. Public Interest Factors

■ The *Piper Aircraft* court summarized the relevant public interest factors:

> administrative difficulties flowing from court congestion; the "local interest in having localized interests decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and in the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (quoting *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843). The only administrative difficulty resulting from this Court's retention of the case is that of translation. As discussed above, most of the documentary evidence is in English. The time and cost of translation in this case would impose more of a burden and inconvenience on the parties in the Netherlands than in the United States.

The local interest of the two alternative fora are roughly equivalent. The Netherlands has an interest in adjudicating the rights of its corporations and partnerships, such as the Neddrill plaintiffs. Neddrill, however, has demonstrated that the Rich Duke is no stranger to either the United States or Delaware. *See* D.I. 24 at 8 ("In the past year, the RICH DUKE has made at least four voyages to Delaware."); D.I. 26 at Exhibit C. In general, "Delaware is interested in ensuring that businesses ... operating within its borders abide by the law." *Lony*, 886 F.2d at 642; *see also Henry v. S/S Bermuda Star*, 863 F.2d 1225 (5th Cir.1989) (regular contacts with the United States militates against dismis-

sal under the doctrine of *forum non conveniens*). In particular, Delaware is certainly interested in the alleged negligent operation of an oil tanker that makes regular voyages through its waters. Rich Duke's periodic use of Delaware waterways also significantly reduces the "unfairness of burdening" Delaware citizens with jury duty, since they benefit from transactions derived from the use of the state's waters.

Assuming for the purposes of this motion that the Court must apply foreign law if the motion were denied, *see supra* note 9 and preceding text, this factor weighs in favor of granting the motion to dismiss. *See Piper*, 454 U.S. at 251, 102 S.Ct. at 263; *Lacey*, 862 F.2d at 48. This factor alone, however, is insufficient to justify granting the motion to dismiss. *See Piper*, 454 U.S. at 260 n. 29, 102 S.Ct. at 268 n. 29.

The public interest factors in this case are in rough balance. There would be fewer administrative problems in Delaware, but this Court would be forced to employ foreign law. The remaining factors are also indeterminate. The Court holds that the Rich Duke has failed to carry its burden of persuasion in the public factor analysis. Because Rich Duke has not met its burden on either the public or private factor inquiries, the motion to dismiss on the grounds of *forum non conveniens* will be denied.

B. COMITY

■ Rich Duke argued in its opening brief that "the arrest should be vacated and this action should be dismissed under principles of comity." D.I. 12 at 9.[10] Comity "is the recognition which one nation allows within its territory the legislative, executive or judicial *acts* of another nation." *Societe Nationale v. United States District Court*, 482 U.S. 522, 107 S.Ct. 2542, 2555 n. 27, 96 L.Ed.2d 461 (1987) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143–44, 40 L.Ed. 95 (1895)) (emphasis added); *see Purnell v. Missouri Dept. of Corrections*, 753 F.2d 703, 709 (8th Cir.1985) ("Comity concerns

---

**10.** This contention did not resurface in either Rich Duke's reply brief or at oral argument.

The issue of comity will, therefore, only be addressed briefly here.

the recognition that one sovereign extends to the ... acts of another."). This Court's application of the comity principle similarly focuses on an *action* by a foreign government: "an American court will under principles of international comity recognize a *judgment* of a foreign nation...." *Pilkington Bros. P.L.C. v. AFG Indus. Inc.,* 581 F.Supp. 1039, 1043 (D.Del.1984). In fact, in every case cited by the Rich Duke where the principle of comity was applied, the foreign court had made some form of binding decision. The Dutch court has not yet taken any action in the related case before it. *See* D.I. 32 at 20 ("the Dutch court has not issued any order one way or the other with respect to any issue in this case"). The principle of comity is inapplicable in the present stage of this litigation.[11]

The "comity" argument could also be interpreted as urging the application of a "first-filed rule." However, "[t]he rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty." *Compagnie Des Bauxites De Guinea v. Insurance Co. of North America,* 651 F.2d 877, 887 n. 10 (3d Cir.1981) (citing *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941)). When related cases are before two different sovereigns the appropriate procedure is to permit both jurisdictions to proceed, with any decision of one becoming *res judicata* on the other. *See Laker Airways v. Sabena, Belgian World Airlines,* 731 F.2d 909, 929 (D.C.Cir.1984); *I.J.A., Inc. v. Marine Holdings, Ltd., Inc.,* 524 F.Supp. 197, 198 (E.D. Pa.1981); *Moore v. Little Giant Indus., Inc.,* 513 F.Supp. 1043, 1050 (D.Del.1981) (permitting parallel proceedings in United States District Court and in Utah state court), *aff'd,* 681 F.2d 807 (3d Cir.1982). Rich Duke's motion based on comity is, therefore, premature and will be denied.

### ORDER

For the reasons set forth in the Court's Memorandum Opinion entered in this action on this date, it is

ORDERED, ADJUDGED, and DECREED that:

Defendants' motion to vacate the arrest of the M/T Rich Duke and dismiss the complaint on the grounds of *forum non conveniens* or, alternatively, comity is hereby denied.

---

**11.** Indeed, if courts were as accommodating as the Rich Duke urges them to be, no case would ever be heard if suits were filed in two or more countries.